SIERRA CLUB, Committee for Better Transit Inc., NYC Clean Air Campaign, Inc., West 12th Street Block Association, Otis Burger, Mary Rowe, Citizens Committee of Hudson County, and Howard Singer, Plaintiffs,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, Clifford L. Alexander, Jr., as Secretary of the Army of the United States, John W. Morris, as Chief of Engineers, Clark H. Benn, as New York District Engineer of the United States Army Corps of Engineers, and William C. Hennessy, as Commissioner of the New York State Department of Transportation, Defendants.

No. 79 Civ. 3363.

United States District Court,
S. D. New York.

Nov. 8, 1979.

Butzel & Kass by Albert K. Butzel, New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York by Jane E. Bloom, Asst. U. S. Atty., New York City, for defendants.

## MEMORANDUM AND ORDER

OWEN, District Judge.

This action, commenced by the Sierra Club and others, arises out of the controversial Westway Project, a proposal by the New York State Department of Transportation for the construction of a superhighway on the west side of New York City. In April 1977, the State applied to the United States Army Corps of Engineers for landfill permits necessary for construction of the highway. As required by § 102(2)(C) of the National Environmental Policy Act of 1969 [42 U.S.C. § 4332(2)(C)] ("NEPA"), the State submitted an environmental impact statement ("EIS") to the Corps.[1]

Beginning in June 1978, the plaintiffs appealed to the Corps to update or supplement the EIS by incorporating new information.[2] The Corps' District Engineer considered this request, but ultimately decided not to require a new or additional EIS.[3]

Without waiting for a final decision from the Corps on the permit requests (a decision which has yet to be made), plaintiffs brought this action to reverse the District Engineer's determination as to the adequacy of the EIS. Defendants have moved to dismiss the complaint contending, *inter alia,* that the matter is not ripe for judicial intervention.

Administrative actions are not justiciable unless they are "final" within the meaning of § 10(c) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); *Toilet Goods Ass'n, Inc. v. Gardner,* 387 U.S. 158, 162, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). The APA reflects a Congressional determination that judicial intervention must be deferred until the administrative decision-making is completed. This policy avoids both disruption of the administrative process by piecemeal appeals, and advisory opinions on issues not fully framed or potentially moot. *Abbott Laboratories v. Gardner, supra* 387 U.S. at 148–49, 87 S.Ct. 1507; *see also, Pepsico, Inc. v. F. T. C.,* 472 F.2d 179, 185 (2d Cir. 1972).[4]

1. NEPA mandates that all federal agencies include an EIS in every "recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). It is undisputed that one such "major Federal action" is the granting of landfill permits by the Corps for the proposed Westway highway under Section 404 of the Federal Water Pollution Control Act [33 U.S.C. § 1344] and Section 10 of the Rivers and Harbors Act of 1899 [33 U.S.C. § 403].

2. Among the inadequacies or omissions in the EIS cited in the complaint are the following:
   (1) insufficient consideration of an alternative under the "interstate transfer statute" [23 U.S.C. § 103(e)(4)] whereby the federal funds allocated for Westway could be "traded in" for improvements in the region's mass transportation system;
   (2) the omission of information released in April 1978 by the Federal Insurance Administration suggesting that construction of Westway could increase flooding in low-lying areas of New Jersey;
   (3) failure to discuss new information in a report by the Tri-State Regional Planning

Commission suggesting Westway would cause greater air pollution than previously anticipated;
   (4) failure to analyze the effects of the energy shortage.

3. The regulations of the Corps vest in the District Engineer the decision whether a new or supplemental EIS is required. 33 C.F.R. § 209.-145(f)(2); 33 C.F.R. § 209.410(e)(7)(iv). Thus, under the Corps' own regulations a final determination as to the content of the EIS has been made.

4. [T]he relevant considerations in determining finality are whether the process of administrative decision-making has reached a state where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.
   *Marine Terminal v. Rederi Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970).

Plaintiffs argue that the District Engineer's decision not to incorporate or add updated information to the EIS is "final" within the meaning of the APA. They make this contention despite the fact that the ultimate issue of the permits has not been resolved by the Corps. Section 102(2)(C) of NEPA, where applicable, does mandate that environmental factors be considered throughout the administrative process. "But the time at which a court enters the process is when the report or recommendation on the proposal is made, and someone protests either the absence or the adequacy of the final impact statement." *Kleppe v. Sierra Club*, 427 U.S. 390, 406 n. 15, 96 S.Ct. 2718, 2728–29, 49 L.Ed.2d 576 (1976).

 An agency's failure or refusal to prepare or file an EIS where required by NEPA may not be judicially reviewed until final orders on the proposed action have been issued. *Mobil Oil Corp. v. F. T. C.*, 562 F.2d 170 (2d Cir. 1977). Even where an EIS has been prepared, questions as to its scope and validity are not ripe for judicial review until final agency action has been taken. *Sierra Club v. Morton*, 421 F.Supp. 638, 646 (D.D.C.1974); *Natural Resources Defense Council v. Andrus*, 448 F.Supp. 802, 806 (D.D.C.1978).[5] The adequacy of an EIS can only be evaluated in light of specific proposals. For example, an EIS must discuss all relevant alternatives to proposed agency action. Whether the content and scope of those discussions is adequate necessarily depends on the precise nature of the agency's final recommendation. *Natural Resources Defense Council, Inc. v. Callaway*, 524 F.2d 79, 93 (2d Cir. 1975).

In this case, since the Corps has not decided whether to issue the landfill permits, the question of the adequacy of the EIS prepared to support that decision is not yet justiciable. Thus, defendants' motion is granted and the action is dismissed.

So ordered.

---

5. In *Aberdeen & Rockfish R. Co. v. SCRAP* ("SCRAP II"), 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975), the Supreme Court held that the issue of whether under NEPA sufficient consideration had been given to environmental factors at a general revenue proceeding of the Interstate Commerce Commission ("ICC") was justiciable. The court reached this conclusion even though the ICC had not made a final decision on the specific rates in question. It did so, however, only after finding that

a general revenue proceeding is itself a "major federal action," independent of any later adjudication of the reasonableness of particular rates, requiring its own final environmental impact statement so long as the proceeding has a substantial effect on the environment. 422 U.S. at 318–19, 95 S.Ct. at 2355. In this respect, therefore, SCRAP II is distinguishable from the case at hand.