SIERRA CLUB, the City Club of New York, Business for Mass Transit, Committee for Better Transit Inc., NYC Clean Air Campaign, Inc., West 12th St. Street Block Assn., Hudson River Fishermen's Assn., Hudson County Citizens for Clean Air, Seymour Durst, Otis Burger, Mary Rowe and Howard Singer, Plaintiffs-Appellees,

v.

William C. HENNESSY, as Commissioner of the New York State Dept. of Transportation, Defendant-Appellant,

The City of New York, Defendant-Intervenor-Appellant.

Nos. 513, 522, 523, 525, Dockets 82–6175, 82–6183, 82–6193, 82–6199.

United States Court of Appeals, Second Circuit.

Argued Sept. 29, 1982.

Decided Dec. 6, 1982.

Albert K. Butzel, New York City (Mitchell S. Bernard, Butzel & Kass, New York

City, of counsel), for plaintiffs-appellees Sierra Club, et al.

Leonard Olarsch, Office of the Corp. Counsel for the City of New York, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Robert Pfeffer, Asst. Corp. Counsel, Leonard Koerner, John C. Brennan, Gary Schuller, New York City, of counsel), for defendant-intervenor-appellant City of New York.

Milton S. Gould, New York City (Bernard D. Fischman, Shea & Gould, New York City, Darrell Harp, Michael McDonald, Albany, N.Y., Gary H. Baise, Jonathan Z. Cannon, Karl S. Bourdeau, Beveridge & Diamond, Washington, D.C., of counsel), for defendant-appellant Hennessy.

Before OAKES, MESKILL and KEARSE, Circuit Judges.

MESKILL, Circuit Judge:

The New York State Department of Transportation (NYSDOT) and the City of New York appeal from the issuance of the permanent injunction by United States District Court for the Southern District of New York, Thomas P. Griesa, J., enjoining the Federal Highway Administration (FHWA) and related federal defendants [1] from "expending, or from undertaking any commitment to expend, federal funds for the acquisition of 'right-of-way' for Westway," a highway project in New York City. We reverse.

*Background*

The Westway Project is a proposed replacement for the crumbling and now largely demolished West Side Highway between 42nd Street and the Brooklyn Battery Tunnel, on the west side of Manhattan in New York City. The project contemplates the creation of a landfill which will support a six lane interstate highway, 93 acres of parkland, and substantial residential and commercial development.

Planning for Westway started in the early 1970s, when the united efforts of the

Governor of New York and the Mayor of New York City resulted in the creation of the "West Side Highway Project" under the auspices of the New York State Department of Transportation (NYSDOT). NYSDOT initiated the planning process by requesting the Federal Highway Administration (FHWA) to approve the West Side corridor for treatment as an interstate link. Under the Federal-Aid Highway Act, 23 U.S.C. § 103 (1976 & Supp. III 1979), Westway, as part of the interstate system, would be eligible for ninety percent federal funding.

Next, a draft Environmental Impact Statement (EIS) was prepared pursuant to section 102(2)(C) of the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C) (1976) (NEPA), and on April 25, 1974 that draft EIS was circulated for public review and comment. In January of 1977, a Final Environmental Impact Statement (FEIS) was issued, which analyzed, among other things, the quality of urban development, traffic patterns, air quality, noise, water quality, and the impact of the landfill on the acquatic habitat of the interpier region. The FEIS also addressed and rejected the possible "trade-in" of the interstate road project, in exchange for federal funds to make capital improvements in the City's mass transit system. Finally, the FEIS identified the reasons for preferring the Westway design.

With respect to the impact on fish, the 1977 FEIS included an attachment, entitled "Water Quality Technical Report," which analyzed the fishery data sampled from the Hudson River interpier basin in May and June of 1973. Based on this report, the FEIS stated that the landfill would exert no adverse impact on the Hudson River fish population because no significant fish life existed in the landfill area. The report characterized the interpier area as "almost devoid of macroorganisms" and "biologically impoverished." J.App. at 2361.

---

1. The federal defendants included Andrew L. Lewis Jr., Secretary of Transportation, the United States Department of Transportation, and Raymond A. Barnhart, Administrator of the Federal Highway Administration.

After the United States Department of Transportation and the FHWA approved federal funding for Westway, NYSDOT applied to the Army Corps of Engineers for a dredge-and-fill permit, the final prerequisite to the construction of the landfill. *See* Federal Water Pollution Control Act, § 404 (The Clean Water Act), 33 U.S.C. § 1344 (1976), and Rivers and Harbors Appropriation Act of 1899, § 10 (Rivers and Harbors Act), 33 U.S.C. § 403 (1976). Thereafter, in 1977 and 1978, the Environmental Protection Agency, the Fish and Wildlife Service and the National Marine Fisheries Service expressed serious concerns about Westway's impact on the aquatic habitat, about possible flooding, the leaking of toxic materials from the landfill, and the question of design alternatives. J.App. 568–675; 2593–2659; 2672–78; 2794–2810; 2812–14; 2888–2901.

In December of 1978, after further consultation with the Environmental Protection Agency, NYSDOT determined that the project's impact on fishery resources required further study. NYSDOT commissioned Lawler, Matusky and Skelly Engineers to perform the 13-month analysis of the fish inhabiting the interpier basin. In September and November of 1980 the study was released. It showed substantially more aquatic life in the interpier area than was previously believed to inhabit that locale. The study concluded that, contrary to the 1977 FEIS, the landfill sites were not devoid of fish but served as a major overwintering or nursery ground for striped bass and other species. Despite the LMS study, and the environmental agencies' continued expressions of concern about Westway's impact on the Hudson River, the Corps issued a dredge-and-fill permit in March of 1981.

In 1974, a suit seeking to prevent the construction of Westway had been brought in the United States District Court for the Southern District of New York. In that first suit, Action for Rational Transit, a consumer group, moved for a preliminary injunction barring the State's acquisition of the right-of-way from the City. *Action for Rational Transit v. West Side Highway Project,* 517 F.Supp. 1342 (S.D.N.Y.1981), *reprinted in* J.App. at 1.[2] Sierra Club initiated a second suit after the Corps issued the dredge-and-fill permit in March of 1981,[3] alleging that the issuance of the permit violated several statutes, including NEPA.

After conducting a hearing on July 17, 1981, the district court in the first suit denied the plaintiffs' motion for a preliminary injunction. The court found that because the federal and state law provide procedures to reinstate the *status quo ante,* the plaintiffs had failed to show that they would suffer irreparable harm from the State's acquisition of the right-of-way. *Id.* at 1344, *reprinted in* J.App. at 8–9; *see* 23 C.F.R. Part 480 (1980); New York Eminent Domain Procedure Law § 406.

In light of that ruling, on September 8, 1981, the FHWA issued a "Letter of Approval" to NYSDOT, authorizing the state to proceed with the "acquisition of the right-of-way" and with "relocation assistance and pier demolition." J.App. 550–51. Pursuant to this authorization, on September 11, 1981, the State irrevocably acquired the City-owned property needed for Westway.[4]

---

**2.** *Action for Rational Transit* was commenced in 1974, but lay dormant until 1981 when the plaintiffs amended their complaint to move for the preliminary injunction.

**3.** Since 1978, the Sierra Club had been requesting the Corps to issue a SEIS on the fishery question. At that time, the Corps' district engineer rejected its request. Sierra Club challenged this decision in the United States District Court, but the case was dismissed as premature. *Sierra Club v. U.S. Army Corps of Engineers,* 481 F.Supp. 397 (S.D.N.Y.1979).

**4.** In granting the *Sierra Club* plaintiffs' motion for a preliminary injunction against the FHWA, the district court refused to enjoin the State from compensating the City for the acquisition. This refusal was based on a finding that title had passed to the State on September 11, 1981 and that the State's obligation to compensate the City thereby became fixed and irrevocable. J.App. at 2066. The court acknowledged the fiscal predicament in which this left the State, but was apparently of the view that the State assumed such a risk when it acquired the land pursuant to the FHWA's September 8, 1981 authorization.

Thereafter, on November 11, 1981, the district court ruled on summary judgment motions filed by both parties in both the *Action for Rational Transit* and *Sierra Club* cases. In *Action for Rational Transit,* the court granted the defendants' motion for summary judgment, dismissing the suit. In *Sierra Club,* the court granted the Corps' motion for summary judgment as to all of Sierra Club's claims except those relating to the project's impact on fish. Between January 19 and February 1, 1982, the district court held a trial to consider whether the EIS adequately evaluated Westway's impact on fishery resources and to review the Corps' consideration of the EIS.

On March 31, 1982 the district court issued its opinion concerning the various challenges to Westway. It reaffirmed its previous decision dismissing the bulk of the claims. But with respect to fisheries, the district court found that the EIS, upon which the Army Corps had relied, was inadequate in its assessment of the proposed landfill's impact on juvenile fish. The court ruled that the Corps violated NEPA in determining not to prepare a SEIS in response to the commissioned study, and due to asserted shortcomings in the Corps' consideration of the fishery impacts, the dredge-and-fill permit lacked a legally sufficient basis under the Clean Water Act and the Rivers and Harbors Act. A judgment dated April 14, 1982 was rendered to that effect.

In its judgment, the district court remanded the permit to the Corps for reconsideration in compliance with the applicable statutes and regulations. The court specifically directed the Corps to prepare and circulate a SEIS evaluating, among other things, the Westway landfill's impact on the Hudson River fishery resources. The landfill for the construction of Westway was enjoined pending these further proceedings. J.App. 105–08.

After this trial, plaintiffs, at the court's suggestion, moved to amend their complaint in *Sierra Club* to add the Federal Highway Administration and related individuals as party-defendants.[5] The amended complaint alleged, *inter alia,* that the FHWA, in the 1977 EIS, inadequately considered fishery impacts and improperly failed to supplement the EIS in light of subsequent new information. On April 20, 1982 the district court added the FHWA as a party and then granted plaintiffs' motion for a preliminary injunction against the FHWA to prevent payment to New York State for acquisition of the right-of-way. NYSDOT, FHWA and the City[6] appealed from the district court's grant of the preliminary injunction. On June 16 this Court heard oral argument (Docket No. 82–6095). However, on June 30, prior to the announcement of our decision, the district court following a trial on the merits issued its opinion with respect to the plaintiffs' claims against the FHWA. The court held that the 1977 EIS did not adequately address the fishery question and should have been corrected by an SEIS. Accordingly, FHWA's design location and funding approvals for Westway were declared void as to future actions to implement Westway, and the matter was remanded to FHWA for further proceedings. Moreover, in its June 30 decision the district court replaced the preliminary injunction with a permanent injunction barring FHWA's reimbursement of the State of New York. The judgment implementing the June 30 decision was issued on July 23, 1982 and included a provision for extensive agency record-keeping, and the appointment of a special master to oversee the proceedings before the Corps and FHWA on remand.

---

**5.** Following the district court's comments in both *Action for Rational Transit* and *Sierra Club,* the plaintiffs moved to amend their complaint to add as defendants the United States Department of Transportation, Andrew L. Lewis, Jr., Secretary of Transportation, the Federal Highway Administration and Raymond A. Barnhart, Administrator of the Federal Highway Administration.

**6.** On April 20, 1982 the district court granted the City of New York permission to intervene as a defendant. As of September 22, 1982 the City withdrew its appeal from all the district court's rulings except the grant of the permanent injunction.

NYSDOT and the City appealed from that portion of the June 30 order which permanently enjoined FHWA from reimbursing the State for the acquisition of its property. (Docket No. 82–6125). On July 22 this Court by summary order dismissed as moot the earlier appeals from the district court's grant of the preliminary injunction. On August 9 the Court consolidated this present appeal with the FHWA and Corps appeals from remaining district court rulings in the July 23 judgment and with the NYSDOT and Army Corps appeals from the April 14 judgment and with Sierra Club's cross-appeal from that judgment.

In order to further efficient judicial decision making, these appeals have been deconsolidated for the purposes of opinion writing. Consequently, this opinion deals solely with that portion of the July 23 judgment granting the permanent injunction against FHWA payment of the right-of-way acquisition costs. A second opinion will follow which examines the merits of all the other issues raised in these appeals.

*Discussion*

■ Although the district court replaced its initial grant of preliminary relief with a permanent injunction, the equitable principles and scope of review remain the same. *Sierra Club v. Alexander,* 484 F.Supp. 455, 471 (N.D.N.Y.1980), *aff'd without opinion,* 633 F.2d 206 (2d Cir.1980). This Circuit will grant a preliminary injunction upon a "showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief." *Sperry International Trade, Inc. v. Israel,* 670 F.2d 8, 11 (2d Cir.1982), quoting *Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). An order granting injunctive relief will be reversed on appeal only where there has been an abuse of discretion or a clear mistake of law. *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976).

NYSDOT and the City contend that the district court erred in finding that the plaintiffs will suffer irreparable harm if the FHWA is allowed to reimburse New York State and that the court erred in failing to balance this perceived harm against potential harms to the State and City resulting from the injunction. We agree.

*Irreparable Harm*

■ "[T]he basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) (citations omitted). The appellee's sole showing of irreparable harm in the district court was the claim that *any payment* on this project would jeopardize impartial review under NEPA. The district court agreed, stating that "[t]he commitment of these [federal] funds [for the right-of-way] threatens to seriously prejudice the objective reconsideration which is necessary." J.App. at 130. We believe such a finding of irreparable harm was erroneous.

In the first place, the FHWA's payment of funds is not irrevocable. The State must refund the FHWA's subsidy if the Westway project does not go forward or the land is not used for an alternative transportation scheme. 23 U.S.C. § 103(e)(7) (Supp. III 1980). Moreover, even if the project does not go forward in its present form, presumably some new scheme will be proposed to replace the West Side Highway, and it will be subsidized by federal funds. Under such circumstances, a payback would never be necessary and at most, the payment in dispute would be an advance to the State on larger sums needed to replace any such highway.

But even without the refund, we believe that any threat to the objectivity of either FHWA's, the Corps' or NYSDOT's reconsideration of Westway would flow from the acquisition of the right-of-way, not from the FHWA's merely ministerial act of payment. In all those decisions that have reviewed alleged violations of NEPA, the courts that have granted injunctions have expressly prohibited the *future* acquisition

of a right-of-way, or further spending of funds. The courts reasoned that if the State continued to acquire land or to receive federal funds while the EIS was being developed, a decision to abandon the project would become "increasingly undesirable." *Arlington Coalition on Transportation v. Volpe,* 458 F.2d 1323, 1329 (4th Cir.), cert. denied, 409 U.S. 1000, 93 S.Ct. 312, 34 L.Ed.2d 261 (1972). This would in turn make a "sham of the reconsideration required by federal law." *Id.* (footnote omitted). *See Steubing v. Brinegar,* 511 F.2d 489, 497 (2d Cir.1975); *Environmental Defense Fund v. Tennessee Valley Authority,* 468 F.2d 1164 (6th Cir.1972); *Lathan v. Volpe,* 455 F.2d 1111 (9th Cir.1971); *Keith v. Volpe,* 352 F.Supp. 1324 (C.D.Cal.1973), aff'd, 506 F.2d 696 (9th Cir.1974).

We do not believe that such a rationale is appropriate here. In our case the property has already been acquired by the State and its payment obligation, backed by the FHWA, has become fixed and irrevocable.[7] Therefore, the FHWA's, Corps' and NYSDOT's review of Westway and its environmental impact will proceed with full knowledge that the State must compensate the City, even if ultimately the Westway plan is rejected. Consequently, it cannot be said that the FHWA's *reimbursement* of New York State will necessarily bias the agencies' consideration of whether to adopt the Westway plan.

Moreover, the State incurred a $90 million liability which it had not anticipated prior to the district court's grant of injunctive relief. By affirming the grant of the injunction, we would be providing the State with a great incentive to insure the comple-

tion of Westway—only then could it recoup the $90 million. Indeed, given the serious fiscal consequences to the State, it is quite plausible that the non-receipt of funds would occasion the very tipping of the scales that plaintiffs claim to fear. Accordingly, we do not believe that FHWA's reimbursement to the State would make a sham of the reconsideration required by federal law.

*Success on the Merits*

 The appellee points to the district court's finding that the FHWA and the Corps violated NEPA as proof of the likelihood of "success on the merits," and concludes that such proof justifies an award of injunctive relief. Even assuming *arguendo* that the appellees have satisfied the "irreparable harm" prerequisite to injunctive relief, we find that they have not shown that the circumstances in this case require injunctive relief. A violation of NEPA does not necessarily require a reflexive resort to the drastic remedy of an injunction. In such cases, this Court has recognized that it must entertain normal considerations relative to the grant of equitable relief. As stated in *Conservation Society of Southern Vermont v. Secretary of Transportation,* 508 F.2d 927, 933–34 (2d Cir.1974), vac. on other grounds, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975):

> Although the procedural requirements of NEPA must be followed scrupulously and cost or delay will not alone justify noncompliance with the Act, where the equities require, it remains within the sound discretion of a district court *to decline an injunction, even where deviations from prescribed NEPA procedures have occurred.*

7. Following the procedures set forth in the federal regulations, on September 8, 1981, the FHWA Division Administrator authorized the State's acquisition of the right-of-way. *See* 23 C.F.R. § 630.114(b); 23 C.F.R. § 630.114(h) which states that "[a]uthorization to proceed with work shall be deemed a contractual obligation of the Federal Government under 23 U.S.C. § 106 and shall require the appropriate funds to be available for the full federal share of the cost of work authorized...."

Pursuant to the FHWA's authorization on September 11, 1981, the State completed the condemnation procedure to acquire the City's property. Under state law the obligation to compensate the City became fixed the moment the State vested title to the City's property. N.Y.Const., Art. 1 § 7; this obligation exists regardless of whether the project is abandoned or continues to completion. *See Kahlen v. State of New York,* 223 N.Y. 383, 390, 119 N.E. 883, 885 (1918); *Wolfe v. State of New York,* 22 N.Y.2d 292, 295, 239 N.E.2d 517, 519, 292 N.Y.S.2d 635, 638 (1968); *Bottillo v. State of New York,* 53 A.D.2d 975, 975–76, 386 N.Y. S.2d 475, 476 (3d Dep't 1976).

(emphasis added) (footnotes omitted). Consequently, we find no merit in the appellee's argument that likelihood of "success on the merits" justifies an award of injunctive relief.

Additionally, the appellee contends that the FHWA's violation of NEPA invalidated its approval of Westway *ab initio,* thus entitling the appellee, without proof of anything more, to an injunction voiding the FHWA's authorization for the acquisition of the right-of-way. The Supreme Court's decision in *Weinberger v. Romero-Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982), states the controlling principle that injunctive relief may not be granted absent a showing of irreparable injury and inadequacy of a legal remedy. Having failed to show irreparable injury, therefore, despite the possible improprieties on the part of the FHWA, the appellee has not established the grounds for the requested injunction.

*Balancing the Equities*

■ Apart from the question of irreparable harm, we believe that the district court erred in failing to weigh the adverse effects of injunctive relief on the State and the City. The State contends that the payment of an unanticipated $90 million to the City will have a direct and far-reaching impact on the State programs and budgetary processes. J.App. 538–40 (Affidavit of C. Mark Lawton).[8] The City contends that its 1983 budget has been calculated with the expectation of receiving the $100 million for the right-of-way from the State, and this expectation will be frustrated if federal funds are not forthcoming. J.App. at 534–37 (Affidavit of Louis A. Friedrich).[9]

We believe that where, as here, "public consequences" are implicated, it is incumbent upon a district court in exercising its discretion to " 'balance[ ] the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction.' " *Weinberger v. Romero-Barcelo,* 456 U.S. at 312, 102 S.Ct. at 1803, quoting *Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944). The district court abused its discretion by failing to undertake this balancing. Had the court done so, we believe that it would have been

---

8. C. Mark Lawton, Director of the Division of the Budget of the State of New York, stated:

Relying on the anticipated 90% Federal reimbursement, the Governor, however, has included only $9 million in disbursements by the State for payment to the City of New York for the purchase of the real property. While the State's financial plan includes the State advance of the Federal share of such payment, reimbursement of such advance by the Federal Highway Administration within one week after the advance is made is also anticipated. Failure to receive the Federal reimbursement would result in unbudgeted costs to the State during the 1982–83 fiscal year, and would serve to unbalance the State financial plan, which contains no reserves to accomodate [sic] this loss. It would require that I exercise my authority to administratively reduce disbursements from the General Fund of the State in the area of State operations to maintain a balanced financial plan which, based upon current projected receipts and disbursements, would result in a reduction of force in excess of 10,000 State employees. The magnitude of this action would result in chaos in the governmental operations of the State.

J.App. at 540–41, Lawton May 13, 1982 Affidavit at 3–4.

9. Leonard Koerner, Assistant Corporation Counsel for the City of New York, stated:

The harm to the City's budget if prompt payment is not made will . . . be devastating. Since the State has not paid the City in the absence of reimbursement by FAWA [sic], the City presently can not utilize the $97,222,000 to reduce the undisputed fiscal 1983 budget gap. In order to reduce the gap other measures must of necessity be undertaken. Furthermore, the City's 1983 budget may be affected by a number of uncertainties, such as the extent of state aid, federal budget reductions, legislative action on the City's proposal for new taxes, and the City's future collective bargaining . . . . Since the City is required by law to have a balanced budget, any of these uncertainties could trigger the need for immediate corrective action. Unfortunately, in such a situation, the options available to the City would probably be limited to either increased taxes or cutbacks in City services. In order to reduce the risk of such an occurrence, prompt receipt of these funds by the City is critical . . . .

J.App. at 547–48, Koerner May 20, 1982 Affidavit at 5–6.

clear that the possible injuries to the State and the City far outweigh the potential benefits to the plaintiffs. As was previously discussed, if we choose not to enjoin the FHWA reimbursement, the plaintiffs will suffer only negligible harm. In contrast, the district court's order which does not enjoin NYSDOT from having to pay the City, but precludes it from receiving ninety percent of the funds from the FHWA, will exert a strong adverse impact on the State's fiscal policies. Furthermore, the City is being harmed each day that the State withholds payment pending receipt of FHWA reimbursement.

Accordingly, we find that the district court abused its discretion in enjoining the FHWA from reimbursing the State for ninety percent of the acquisition cost of the right-of-way for Westway.[10] Therefore, we reverse the district court's grant of permanent injunctive relief. The mandate shall issue forthwith.

---

**10.** In resting our decision on the lack of irreparable harm, we need not discuss appellants' contention that the doctrine of laches should bar appellee's suit. *See generally, City of Rochester v. United States Postal Service,* 541 F.2d 967, 977 (2d Cir.1976) (in environmental cases, in addition to the doctrine of laches, this Court recognizes a rule of equity that supports the enforcement of contracts).