**PLANNED PARENTHOOD FEDERATION OF AMERICA, Planned Parenthood of the Rocky Mountains, Planned Parenthood Association of Utah, Boulder Valley Women's Health Center, Marilyn Foelski, M.D., Philip Freedman, M.D., and Kirtly Jones, M.D., Plaintiffs,**

v.

**Otis BOWEN, M.D., individually and in his capacity as Secretary of the United States Department of Health and Human Services, Defendant.**

Civ. A. No. 88–Z–158.

United States District Court, D. Colorado.

June 15, 1988.

James W. Hubbell, Kelly/Haglund/Garn-sey & Kahn, Denver, Colo., Roger K. Evans, Dara Klassel, Beth Otten, Planned Parenthood Federation of America, Inc., New York City, for plaintiffs; Jeffrey R. Oritt, Tibbals, Howell, Jones & Moxley, Salt Lake City, Utah, Howard Holme, Fairfield & Woods, Denver, Colo., of counsel.

Chalk Mitchell, Asst. U.S. Atty., Denver, Colo., Robert J. Cynkar, Thomas Millet, Federal Programs Branch, Civil Div., Dept. of Justice, Washington, D.C., for defendant.

## FINAL ORDER AND JUDGMENT

WEINSHIENK, District Judge.

This case is before the Court on defendant's Motion For Summary Judgment and Plaintiffs' Cross–Motion For Summary Judgment.[1] In an earlier Order Granting

---

1. After the preliminary injunction hearing, the parties stipulated that the issue of whether the Court should grant permanent injunctive relief

Plaintiffs' Motion For Preliminary Injunction (hereinafter Preliminary Injunction Order),[2] the Court preliminarily enjoined defendant from putting into effect certain regulations governing the activities of entities receiving funds for family planning services under Title X of the Public Health Service Act, 42 U.S.C. §§ 300–300a–6a. *See* 53 Fed.Reg. 2944–45 (Feb. 2, 1988) (to be codified at 42 C.F.R. §§ 59.2, 59.7–59.10 (1988)). The present motions and supporting briefs address the issue of whether plaintiffs are entitled to an injunction permanently enjoining defendant from enforcing or applying the above-mentioned regulations.

Summary judgment is appropriate only when there is no genuine issue of material fact so that a reviewing court can resolve the issues presented as a matter of law. *Carey v. United States Postal Service*, 812 F.2d 621, 623 (10th Cir.1987), *citing, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Upon careful review of the briefs and arguments of the parties and *amici*, this Court concludes that plaintiffs are entitled as a matter of law to a permanent injunction which, by definition, permanently prevents defendant from enforcing or applying the regulations at issue. Accordingly, plaintiffs' Cross Motion For Summary Judgment will be granted, and defendants' Motion For Summary Judgment will be denied.

■ The legal analysis which the Court must conduct in determining whether to issue a permanent injunction is virtually identical to the analysis involved in the preliminary injunction context. *Sierra Club v. Hennessy*, 695 F.2d 643, 647 (2d Cir.1982); *Sierra Club v. Alexander*, 484 F.Supp. 455 (N.D.N.Y.), *aff'd mem.*, 633 F.2d 206 (2d Cir.1980). That is, in order to grant a permanent injunction, the court must find that (1) plaintiffs have succeeded on the merits; and (2) the "balance of equities" favors the issuance of a permanent injunction. *Alexander*, 484 F.Supp. at 471. Equitable principles considered in determining whether to grant either preliminary or permanent injunctive relief are the same. *Hennessy*, 695 F.2d at 647. Plaintiffs must demonstrate that (1) irreparable injury will occur; (2) the threatened injury to them outweighs whatever damage a permanent injunction may cause defendant; and (3) the granting of permanent injunctive relief is not harmful to the public interest. *Id.* at 647–650; *Philadelphia Welfare Rights Organization v. O'Bannon*, 525 F.Supp. 1055, 1057–58 (E.D.Pa.1981); *see also* 7 J. Moore, Moore's Federal Practice § 65.04[1], at 65–30 to 65–70 (1980); *Cf. Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *Mesa Petroleum Co. v. Cities Service Co.*, 715 F.2d 1425, 1432 n. 13 (10th Cir.1983).

■ Regarding the success on the merits and irreparable injury issues, the Court has reviewed carefully the briefs and supplemental filings of the parties as well as the *amici* briefs and is convinced that the legal conclusions and reasoning set forth in the Preliminary Injunction Order are correct. *See Planned Parenthood*, 680 F.Supp. at 1467–78. Accordingly, the Court concludes that plaintiffs have established success on the merits as a matter of law. Defendant lacked statutory authority to enact the regulations in question.

In addition, the Court determines that plaintiffs have demonstrated irreparable injury as a matter of law because the regulations in question are unconstitutional. More specifically, the regulations violate (1) a woman's Fifth Amendment liberty interest in choosing whether to have an abortion, (2) her First Amendment right to receive necessary medical information to enable her to vindicate her Fifth Amendment liberty interest, and (3) a physician's or other treating practitioner's First Amendment right to disseminate necessary medical information to patients.

In support of the conclusions that plaintiffs have demonstrated success on the

---

would be resolved through cross-motions for summary judgment.

**2.** *Planned Parenthood Federation Of America v. Bowen*, 680 F.Supp. 1465 (D.Colo.1988).

merits and irreparable injury, the Court adopts and incorporates by reference the reasoning set forth in the Preliminary Injunction Order. *See id.*

Defendant cites the recent Supreme Court case of *Lyng v. International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America* to support its contention that the regulations in question are constitutional. — U.S. —, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988).[3] *Lyng* is distinguishable from the present case. The analytical framework in *Lyng* is qualitatively different from the case at bar. The Supreme Court in *Lyng* employed a rational basis standard of review, which is "typically quite deferential," in upholding the provision at issue. 108 S.Ct. at 1192, 99 L.Ed.2d at 391. On the other hand, the regulations in the present case represent content-based censorship which significantly impairs the First Amendment rights of Title X practitioners and patients, as opposed to merely having some effect on their First Amendment rights. As a result, the Court must analyze these regulations using a more probing strict scrutiny test. *See Elrod v. Burns*, 427 U.S. 347, 362, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). The regulations do not withstand constitutional muster under this more exacting strict scrutiny test. *See Planned Parenthood*, 680 F.Supp. at 1476–78.

The different analytical framework that the Court must use in the present case reflects the fact that the infringement upon First Amendment rights in the present regulations is qualitatively more severe than the provision at issue in *Lyng*. Unlike the provision in *Lyng*, the regulations in the present case represent viewpoint-based discrimination. In addition, the regulations in the present case intrude upon a woman's fundamental right to decide to have an abortion, while the provision in *Lyng* does not implicate any fundamental right. These differences in the factual scenarios of each case provide another basis for distinguishing *Lyng* from the present case.[4]

Another recent Supreme Court decision, *Boos v. Barry*, sheds some light on the First Amendment question. — U.S. —, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). In *Boos*, the Court invalidated on First Amendment grounds a portion of a District of Columbia statute which prohibited the display of any sign within 500 feet of a foreign embassy if it tends to bring that foreign government into "public odium" or "public disrepute." In so doing, the Court reiterated its longstanding opposition to content-based censorship. Admittedly, *Boos* does not involve the precise issues as the present case. However, the Court's

3. In *Lyng*, the question presented was the constitutionality of a 1981 amendment to the Food Stamp Act, 7 U.S.C. § 2015(d)(3), which states that no household may become eligible to participate in the food stamp program while any of its members is on strike, or receive an increase in the allotment of food stamps it is already receiving because the income of the striking member has decreased. The Supreme Court held *inter alia* that this provision does not violate a striker's First Amendment rights. Defendant cites *Lyng* to support its contention that it is constitutionally permissible for government to impose certain restrictions on funding which may have some effect on First Amendment rights.

4. Defendant also cites the recent District Court case of *Mendelsohn v. Meese*, 686 F.Supp. 75 (S.D.N.Y.1988), to support its contention that the regulations in question are constitutional. In *Mendelsohn v. Meese*, the major issue was the constitutionality of the recently enacted Anti-terrorism Act of 1987, 22 U.S.C. §§ 5201–5203 (West Supp.1988). The Act prohibits certain

types of activities when undertaken with the purpose of furthering the interests of the Palestinian Liberation Organization. *See Mendelsohn*, at 77. In denying plaintiffs' motion for preliminary injunctive relief, the Court held *inter alia* that the Act does not violate plaintiffs' First Amendment rights. Defendant cites *Mendelsohn* to support its contention that plaintiffs have no constitutional right to use federal funds to disseminate information about abortion to patients at Title X clinics.

Like *Lyng*, *Mendelsohn* is distinguishable from the case at bar. First of all, it is a District Court case from a different Circuit, so its precedential value is limited to the value of its reasoning. In addition, the bulk of the First Amendment analysis is dicta. *See* op. at 79–81. Most importantly, *Mendelsohn* is distinguishable on its facts. Unlike the case at bar, *Mendelsohn* does not involve a provision which imposes content-based censorship in a Congressionally subsidized program.

decision in the present case that the regulations violate the First Amendment accords well with the spirit of the Supreme Court's recent pronouncement in *Boos* that government provisions which restrict an individual's ability to freely express certain viewpoints are unconstitutional.

Regarding the balance of hardship question, plaintiffs have submitted numerous declarations from practitioners at Title X facilities detailing the catastrophic effect that implementation of the regulations will have upon their ability to serve the entire range of their patients' needs. In fact, there is evidence in the record that the implementation of the regulations will force certain Title X clinics to terminate their Title X programs altogether. For example, Karrie Galloway, Executive Director of Planned Parenthood Association of Utah (PPAU), asserts in her Declaration that PPAU will have to discontinue its Title X program if the regulations at issue take effect. Declaration of Karrie Galloway, Executive Director of Planned Parenthood of Utah, Declarations Accompanying Plaintiffs' Brief In Support Of Motion For Preliminary Injunction.

In addition, in the Preliminary Injunction Order issued earlier, the Court discussed at length the irreparable injuries plaintiffs as well as Title X patients themselves will incur as a result of defendant's violation of the First and Fifth Amendments. *See Planned Parenthood*, 680 F.Supp. at 1473–78. The totality of the hardship that plaintiffs will incur from the implementation of these regulations far outweighs any harm which defendant will suffer from the issuance of a permanent injunction. In fact, the Court fails to see the harm which will inure to defendant from the issuance of a permanent injunction. The Title X program simply will continue to operate in the effective manner that it has since its inception.

Finally, in considering whether a permanent injunction will be harmful to the public interest, the Court again adopts the conclusions and reasoning set forth in the Preliminary Injunction Order. *See Planned Parenthood*, 680 F.Supp. at 1478.

Regulations which violate constitutional rights of individuals and exceed an agency's statutory authority are harmful to the public interest. Injunctions permanently preventing the implementation of such regulations promote the public interest by preserving adherence to the letter and spirit of the Constitution and to the principle that Congress and not agencies make the law. Permanently enjoining the implementation and enforcement of the unconstitutional regulations in the case at bar is not adverse to the public interest, but rather promotes the public interest.

For the foregoing reasons, it is

ORDERED that Motion For Leave To File Brief Amici Curiae Of Senator Gordon J. Humphrey, et al. In Support of Defendant is granted. The Clerk shall file stamp the tendered brief. It is

FURTHER ORDERED that the Motion For Leave To File Memorandum Of Law In Excess Of Fifteen Pages Of *Amici Curiae* American Academy Of Medical Ethics, et al. In Support Of Defendant's Motion For Summary Judgment shall be treated as a motion for leave to file a brief *amici curiae*, and is granted, over objection. The Clerk shall file stamp the tendered brief. It is

FURTHER ORDERED that defendant's Motion For Summary Judgment is denied. It is

FURTHER ORDERED that Plaintiffs' Cross–Motion For Summary Judgment is granted. It is

FURTHER ORDERED that defendant as well as its officers, agents, employees and attorneys are permanently enjoined from enforcing or implementing in any fashion the regulations published at 52 Fed.Reg. 2944–46 (Feb. 2, 1988), including without limitation the regulations appearing at 42 C.F.R. §§ 59.7–59.10, and the related definitions appearing at 42 C.F.R. § 59.2, against the named plaintiffs as well as all other parties named in the Preliminary Injunction filed February 24, 1988. It is

FURTHER ORDERED that plaintiffs' request for leave to file a response to the

brief *amici curiae* of Senator Gordon J. Humphrey, et. al., filed March 17, 1988, is moot. It is

FURTHER ORDERED that this Order shall constitute the Final Order and Judgment in this case.