17 F.3d 1436
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Rodney Joe FILLMORE, Plaintiff-Appellant,
v.
Miguel ORDONEZ, Osage County Sheriff; Eldon Croucher, Osage
County Deputy Sheriff; Gerald Nitcher, Osage County Deputy
Sheriff; Lori Dunn, Osage County Deputy Sheriff; Ken
Fozdick, Osage County Deputy Sheriff, Defendants-Appellees.
 No. 93-3272.
 United States Court of Appeals, Tenth Circuit.
 March 1, 1994.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, ANDERSON and KELLY, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Rodney Joe Fillmore brought this pro se action under 42 U.S.C.1983, seeking monetary damages against the Osage County Sheriff Miquel Ordonez and five deputy sheriffs for alleged violations of his First, Fourth, Sixth, Eighth and Fourteenth Amendment rights. The parties filed cross motions for summary judgment, and the district court granted summary judgment to the defendants on all counts. Fillmore appeals, contending that: 1) the district court improperly found that he was arrested for failure to display a license; 2) the arresting officer did not have probable cause to arrest; 3) failure to display a license is not an arrestable offense; 4) the arrest was an unlawful retaliation for the exercise of a constitutional right; 5) the search of his truck cab and the seizure of items on the seat violated his Fourth Amendment rights; 6) his prosecution for obstructing the legal process was malicious; 7) he was denied access to legal materials; 8) the denial of his religious diet was punishment; 9) the jail conditions violated his constitutional rights; and 10) he was unconstitutionally subjected to pain when he was dressed and returned from the hospital in a squad car. We affirm.
 
 BACKGROUND
 
 3
 The district court's opinion completely details the background. Fillmore v. Ordonez, 829 F.Supp. 1544, 1550-54 (D. Kan.1993). On the night of December 7, 1991, Fillmore was stopped for speeding by Osage County Deputy Sheriff Eldon Croucher, who had known him since childhood. In response to Croucher's request for his driver's license, Fillmore responded he did not have one. After a radio check disclosed no Kansas license in Fillmore's name, Croucher asked Fillmore if he had a license from another state and if it was suspended. Fillmore refused to answer, stating that he would not admit to a crime. Croucher advised Fillmore that he needed the information to fill out the citation, that Fillmore was obstructing the duty of an officer. Croucher then arrested Fillmore for obstructing official duty and failing to display his license. Incident to the arrest, after handcuffing and placing Fillmore in the patrol car, Croucher removed a briefcase and money bag from the seat of Fillmore's truck and then locked the vehicle.
 
 
 4
 At the jail, Officers Nitcher and Manning were on weekend duty. Fillmore refused to be photographed or fingerprinted without a warrant or to answer questions necessary to fill out the booking information sheets. When Nitcher and Manning indicated that the fingerprinting requirement was statutory, Fillmore continued his refusal, noting that the referenced statute did not apply to him. He also refused to put on the standard jail uniform because his religion forbids his wearing clothing made of mixed fibers.
 
 
 5
 As a result of his conduct, the Osage County Attorney[2] charged Fillmore with two counts of obstructing the legal process under Kan. Stat. Ann. 21-3808 (one for failing to cooperate with Croucher and one for failing to cooperate with Nitcher and Manning during the booking procedures), one count of failing to display his license under Kan. Stat. Ann. 8-244, one count of driving while suspended under Kan. Stat. Ann. 8-262(a) (based on information received from the State of Virginia that his license there had been suspended), and one count of speeding under Kan. Stat. Ann. 8-1336.
 
 
 6
 At booking, Fillmore demanded a special religious diet which prohibited, among other things, meat with fat, pasteurized milk, margarine, white bread, and tap water. On Monday, December 9, Sheriff Ordonez came on duty along with Officer Dunn, the head jailer. That afternoon Officer Fozdick came on duty. On December 10, Fillmore delivered several formal, written, administrative demands which repeated his dietary demands and added demands for a softer mattress, legal books, a switch to turn off the security light and beeper in his jail cell, and the opportunity to examine his jail file. His demands were granted to the extent that resources were available.
 
 
 7
 On Monday morning, December 9, 1991, Fillmore was taken to court for his arraignment. The judge offered to release him on his own recognizance and a $500.00 appearance bond. Fillmore refused to sign the bond, stating his religion forbids his pledging unjust weights and balances, and he was returned to jail. Later that day, he offered to sign a bond pledging gold, which the judge refused.
 
 
 8
 On the evening of December 11, Fillmore fell while stepping out of the shower in his cell. Complaining of serious injury, he was taken by ambulance to the hospital of his choice. Once there, he refused pain medication and blood or urine tests because of religious prohibitions. The examining doctor found no significant injury, declined to admit Fillmore, and advised Officers Dunn and Fozdick that return transport by police car was fine. Fozdick and a male nurse assisted Fillmore in getting dressed while Fillmore complained of continued pain, and Fozdick drove him back to the jail. Upon return to his cell, Fillmore sat up most of the night, working on his legal papers.
 
 
 9
 The court appointed counsel for Fillmore on December 11. On December 12, five days following his arrest, a bond for cash or equivalent property was approved, and Fillmore was released. On December 17, Fillmore filed a motion to dismiss appointed counsel, noting that he was an experienced pro se litigator.
 
 
 10
 On January 21, 1992, Fillmore was tried with his previously appointed counsel acting as standby. The court dismissed the two obstruction counts on Fillmore's motion. It also dismissed the driving while suspended charge on the county attorney's motion, since documentation from Virginia had not arrived. The court convicted Fillmore of failing to display a license and speeding. Fillmore appealed. While the appeal was pending, he brought this action. His convictions were upheld by the Kansas Court of Appeals, and the Kansas Supreme Court denied Fillmore's petition for review.[3]
 
 DISCUSSION
 
 11
 "[I]n order to recover in federal court through 1983 a plaintiff must show: (1) a federal constitutional right was violated; and (2) the individual violating the constitutional right did so under color of law. The civil rights law is not a general tool to discipline local law enforcement officers." Quezada v. County of Bernalillo, 944 F.2d 710, 714 (10th Cir.1991) (citations omitted). The district court granted summary judgment for the defendants on each of Fillmore's claims, finding either no constitutional violation or qualified immunity as a matter of law.
 
 
 12
 We review a summary judgment de novo, applying the same standard as the trial court. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We review the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Abercrombie, 896 F.2d at 1230. However, the mere allegation of some factual dispute will not defeat an otherwise properly supported motion for summary judgment, and a mere scintilla of evidence does not create a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The inquiry is "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Id. at 252 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448 (1872)). With respect to those issues for which he carries the burden of proof, the nonmoving party must produce specific facts "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves" if a properly supported summary judgment motion is to be avoided. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
 
 
 13
 A pro se litigant's pleadings are to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the trial court does not assume the role of advocate for the pro se litigant and need not accept his conclusory allegations. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991).
 
 
 14
 Fillmore's first four assignments of error concern his arrest. As the district court noted, lack of probable cause is an essential element of a 1983 claim for unlawful arrest.[4] Karr v. Smith, 774 F.2d 1029, 1031 (10th Cir.1985). Under Kansas law, Fillmore's Kansas court conviction for the offense of failing to display a license conclusively establishes probable cause for the arrest. "[A] judgment of conviction amounts to a conclusive determination that probable cause for the arrest ... existed (absent any showing of perjury, fraud or corruption in obtaining the judgment).... Therefore, when the petition shows ... a judgment of conviction, it fails to allege a cause of action for ... unlawful arrest...." Hill v. Day, 215 P.2d 219, 223-24 (Kan.1950). Pursuant to 28 U.S.C. 1738, federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Franklin v. Thompson, 981 F.2d 1168, 1170 (10th Cir.1992) (quoting Allen v. McCurry, 449 U.S. 90, 96 (1980)). Since he has made no showing that his conviction was improperly obtained, Fillmore is barred from claiming his arrest was unlawful under 1983.
 
 
 15
 In his fifth assignment of error, Fillmore contends it was error to grant summary judgment on the issue of illegal search and seizure.[5] For the first time on appeal, Fillmore seeks a remedy under provisions of Kansas law that may grant greater protection than that afforded under the rule of New York v. Belton, 453 U.S. 454, 460 (1981). We do not hear arguments not urged in the trial court. Cannon v. City and County of Denver, 998 F.2d 867, 878 (10th Cir.1993).
 
 
 16
 Fillmore's sixth contention is that the district court should not have granted summary judgment to Ordonez, Nitcher, and Manning on the claim of malicious prosecution for obstructing legal process. The district court held that there was no showing that the officers acted maliciously, and the officers' participation in the prosecution did not rise to the egregious level required to support a 1983 claim. Since its ruling, we have received new guidance from Albright v. Oliver, No. 92-833, 1994 U.S. LEXIS 1319 (Jan. 24, 1994). Albright holds that the Fourteenth Amendment does not create a substantive due process right to be free from criminal prosecution except upon probable cause. Rather, a majority of the concurring justices held the constitutional right to be free from baseless criminal prosecution is determined under the Fourth Amendment. Like the petitioner in Albright, Fillmore has pled this constitutional deprivation under the Fourteenth and Fifth amendments, neither of which are applicable, so his claim must fail. To the extent Fillmore claims substantive due process violations, he must look to state law for his remedy.
 
 
 17
 As his seventh claim of error, Fillmore asserts he was denied access to legal materials. The jail log indicates that Fillmore first made his demand for legal materials at 1:45 p.m. on December 10, and these were immediately provided to the extent available at the jail. R. Vol. V, Exhibits, Dunn Ex. 1, log dated 12-10-91; R. Vol. IV, Ordonez Dep. at 52-53. The next morning, on December 11, the court appointed counsel for Fillmore, who came to visit him at jail at 9:40 a.m. R. Vol. II, Tab. 69, Dunn Ex. 1, log dated 12-11-91. We hold that Fillmore was given adequate access to the courts and legal materials as required by Love v. Summit County, 776 F.2d 908, 912 (10th Cir.1985), cert. denied, 479 U.S. 814 (1986).
 
 
 18
 Fillmore's eighth claim is that the denial of a special diet required by his religion violated his First and Eighth Amendment rights. As the district court noted, a pretrial detainee cannot invoke the Eighth Amendment's prohibition which applies only to those convicted of a crime. See Meade v. Grubbs, 841 F.2d 1512, 1519 n. 4 (10th Cir.1988) (citing Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979)). As a pretrial detainee, Fillmore was entitled to be protected from punishment, based upon a due process standard. Bell, 441 U.S. at 535 n. 16. Religious practices can be limited by legitimate penological interests. See Turner v. Safley, 482 U.S. 78, 89 (1987). Brevity of detention may be considered in assessing the restriction. See Block v. Rutherford, 468 U.S. 576, 587 (1984). Safety is a legitimate penological interest. Clifton v. Craig, 924 F.2d 182, 184 (10th Cir.) cert. denied, 112 S.Ct. 97 (1991). Fillmore's deposition reveals that at all times he was able to consume some portions of the food and beverages brought to him, including eggs, whole wheat bread, vegetables, fruits and fruit juices. R. Vol. IV, Fillmore Dep. at 143-44, 148. Although his family brought additional food for him, jail policy prohibits such outside food because of health, sanitary and inspection requirements. Dunn's deposition indicates that the jailers attempted to comply with Fillmore's dietary demands to the extent they could, and that she called the Kansas Department of Corrections for guidance. R. Vol. IV, Dunn Dep. at 6, 38. The jail log shows that Fillmore was given distilled water on the morning of December 10. R. Vol. V, Exhibits, Dunn Ex. 1, log dated 12-10-91. Within twenty-four hours of his formal administrative demand, all food and beverages comported with his religious requirements. R. Vol. IV, Fillmore Dep. at 142. We hold that the short delay in providing a diet in full compliance with Fillmore's religious requirements did not rise to the level of a constitutional deprivation.
 
 
 19
 As his ninth assignment, Fillmore contends that the jail conditions violated his constitutional rights. We agree with the district court that Fillmore's complaints about his mattress were "de minimis," and the security beeper and light were reasonably related to maintaining internal security. As to his being placed in the holding/detox cell for the first night of his incarceration, we agree that the only defendant against whom this claim is made, Sheriff Ordonez, has no liability, since he was not at the jail at the time and did not participate in the decision to place Fillmore in the holding cell. There is no affirmative link between Ordonez and that event, and the doctrine of respondeat superior does not apply under 1983. Ware v. Unified School Dist. No. 492, 902 F.2d 815, 819 (10th Cir.1990). Although Fillmore correctly cites Kansas law which makes the sheriff liable for the acts of his jailers, supervisory liability under 1983 requires an affirmative showing of some custom, regulation or policy which warranted, encouraged or permitted the wrongful act. Butler v. City of Norman, 992 F.2d 1053, 1055 (10th Cir.1993).
 
 
 20
 Finally, the tenth claim of error concerns the pain Fillmore allegedly suffered when Fozdick dressed him at the hospital and returned him to the jail in the squad car. The record shows that the treating physician advised that returning Fillmore by car was acceptable. R. Vol. IV, Dunn Dep. at 25. Fillmore testified that a male nurse assisted Fozdick in getting him dressed. R. Vol. IV, Fillmore Dep. at 268-71. At all times Fozdick followed the advice of, and was assisted by, appropriate medical personnel. We agree with the district court that his acts were reasonably related to the legitimate government objective of returning Fillmore safely and securely to jail and do not amount to "punishment." See Bell v. Wolfish, 441 U.S. at 538-39.
 
 
 21
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 The county attorney was originally named as a party defendant. The claims against her were dismissed without prejudice
 
 
 [3]
 State v. Fillmore, No. 92-68,086-A (Kan. Ct.App. March 19, 1993) (unpublished opinion), rev. denied (Kan. May 7, 1993); R. Vol. III, Tab 84
 
 
 [4]
 In upholding the validity of the arrest, the district court ruled that probable cause existed as a matter of law based on the undisputed facts before it. We affirm that ruling, relying on other grounds which are supported by the record. Greiss v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988)
 
 
 [5]
 The district court upheld the search and seizure on the basis of qualified immunity. On the record before us, we find the seizure constitutionally permissible as incident to the arrest. New York v. Belton, 453 U.S. 454, 460 (1981); United States v. Franco, 981 F.2d 470; 472-73 (10th Cir.1992); United States v. Cotton, 751 F.2d 1146, 1149 (10th Cir.1985)