Jouett Edgar ARNEY, Fred E. Baker, Robert Bookless, and Gary Lee McColpin, Plaintiffs,

v.

Charles E. SIMMONS, Defendant.

No. 95–3036–DES.

United States District Court, D. Kansas.

Sept. 30, 1998.

John F. Carpinelli, Topeka, KS, Kirk W. Lowry, Palmer & Lowry, Topeka, KS, Todd R. Stramel, Jeffrey D. Wicks, Lisa J. Covault, Larrie Ann Brown, Topeka, KS, Lynette F. Petty, Topeka, KS, Thuy D. Pham, Topeka, KS, for Jouett Edgar Arney, Fred E. Baker, Robert A. Bookless, Gary Lee McColpin.

Linden G. Appel, Kansas Department of Corrections, Topeka, KS, for Kansas Secretary of Corrections.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

The four plaintiffs, while confined in Lansing Correctional Facility, Lansing, Kansas, (LCF) and with appointed counsel filed this civil rights complaint pursuant to 42 U.S.C. § 1983, alleging constitutional violation in the system for providing telephone access to inmates at the prison. The Secretary of Corrections for the State of Kansas is the sole defendant. Plaintiffs seek declaratory and injunctive relief. The matter is presently before the court upon defendant's motion for summary judgment. Having considered all the pleadings and materials in the file, the court makes the following findings and order.

At the outset, the court denies in part and grants in part plaintiffs' motion to strike defendant's exhibit 3 (Doc. 175), the affidavit of Darrell Perrin. The motion to strike the entire affidavit on the basis that Perrin was not previously identified as a witness is denied. The court is not persuaded that exclusion of this evidence at this time is required by pertinent legal authority, particularly in light of the fact that defendant's witness list could be amended to include Perrin. The court grants plaintiffs' motion to strike as to paragraphs 8 and 14 of the affidavit which the parties agree are improper statements of opinion. Thus, the affidavit is admitted, with paragraphs 8 and 14 stricken.

## UNCONTROVERTED FACTS

The court finds the uncontroverted facts to be as follows. On November 21, 1994, the Kansas Department of Corrections (KDOC) implemented a new inmate telephone system at Lansing in which inmates use coinless telephones ("inmate phones") to place collect

only calls within the United States. The "inmate telephone system," including what is known as the "inmate call control system," is effective for all KDOC facilities and is provided pursuant to a contract between KDOC and American Telephone and Telegraph, Inc., Southwestern Bell, Inc., and Telematic, Inc. These "inmate phones" are located in common use areas of the facility.

To use inmate phones, a prisoner must complete a Telephone Privilege Request form listing the complete telephone number, name, and address of the person to be called, and their relationship to the inmate. This data is entered by an on-site Telematic Technician into the phone system's data bank, associating it with the inmate's personal identification number (PIN). Plaintiffs use the inmate phones to call family, friends and attorneys.

The "inmate call control system" permits recording and monitoring of inmate calls to outside parties made on the inmate phones, and has an automatic blocking feature which immediately terminates a call to an outside party when that outside party attempts to either transfer that call or convert it to a three-way call. One of the KDOC's stated aims in implementing the system was to reduce the ability of inmates to form criminal conspiracies by way of such transferred or three-way calls, so as to reduce the likelihood of escape, introduction of contraband into the facilities and perpetration of frauds.

Current KDOC policy allows inmates to maintain only 10 numbers on their Telephone Privilege Request forms, even though the phone system is capable of handling more. The number ten was arrived at after discussions involving the executive staff of KDOC Central Office including the Secretary of Corrections and all facility wardens. Ten was determined to be a reasonable number based upon the KDOC's concern as to the difficulty of verification of names, addresses, relationships, and phone numbers on the list. Additionally, it was thought that limiting the number of individuals on the telephone list would assist the Department in the investigation of criminal activity and decrease the opportunity for misuse of the phone system through fraudulent schemes, formation of criminal conspiracies and/or harassment of victims. LCF officials have authority to allow more than 10 names on inmate telephone lists in certain situations. However, there is no policy or written procedure informing inmates of this allowance or guiding the discretionary authority of prison officials.

Inmates must include attorney telephone numbers on their list, and attorneys must be identified as such. After attorney numbers are verified by contact with the attorney, they are added to the data bank. The on-site technician stated in a deposition that verified attorney numbers are entered by her into the system in such a way that the monitoring and recording feature of the inmate call control system is blocked. Thus, if the number has been properly identified and entered, the call cannot be monitored or recorded. Plaintiffs do not adequately refute defendant's evidence that calls placed to attorneys on "inmate phones" are not monitored or recorded.

The Department of Corrections' current policy permits inmates to change phone numbers on the list at 120–day intervals, specifically at the time of their program and classification reviews conducted by correctional counselors on the unit team of their assigned housing unit. KDOC officials selected this interval because they believed it permitted an organized and rational approach to the subject of phone number changes by requiring the changes to be submitted through the correctional counselor at the time the counselor is focusing exclusively on the inmate involved, and at an interval which balances the inmate's interest in maintaining a current list of phone numbers with the facility's need for good order and minimization of administrative burden occasioned by phone number changes.

Upon occasion, it is necessary to permit changes in phone numbers more often than every 120 days. Since the filing of this action, the KDOC has promulgated a new policy (LCF General Order 16,104) which permits changes in phone numbers more often in certain cases. Until advised by their attorney, plaintiffs were unaware of this policy change which was effective March 15, 1996. KDOC policy does not limit the duration or number of calls an inmate may make.

Plaintiffs Arney and McColpin state that they have been denied the request to put a public official on their list. In depositions, KDOC officials testified that KDOC and LCF generally permit phone calls to inmates by judges or other court officials, and other public officials, federal and state, when the request for that call is made by the judge or official. The inmate is then permitted to use a state facility phone in the unit team office of his or her housing unit. Current written policy at LCF does not prohibit the placing of public official phone numbers on an inmate list, and provides for use of facility phones to contact such "privileged persons" not accommodated by the inmate phone system. (LCF Order 16,104, effective 3/15/96).

"Facility phones" are phones located in unit team offices which are a part of the state prison telephone system rather than the inmate system. Current KDOC policy authorizes use of "facility phones" by inmates as an alternative to "inmate phones" on a case-by-case basis when such use is deemed to be in the best interest of the inmate's well being and/or when placing a collect call is imprudent, usually in the event of, but not limited to, a family or personal emergency. It is undisputed that phone calls to attorneys from "facility phones" are subject to being monitored. Unit team offices, where these phones are located, contain sensitive materials pertaining to each inmate then assigned to that housing unit, in "unit team files" or in the form of pending paperwork, such as program and classification reviews, custody level worksheets, parole eligibility reports, etc. These offices have large windows which might allow for observation from the outside, and the desk and file cabinets located in the office are equipped with locking devices.

Inmates are not permitted to make international calls on the inmate phones, but may seek permission to make such calls on "facility phones."

All KDOC inmates, including plaintiffs, are permitted visitation with individuals designated on their visitation list, and are permitted correspondence with those and other individuals outside the prison. (LCF General Order 16,101).

All KDOC inmates, including plaintiffs, are also permitted access to the courts through the use of legal mail as authorized by the provisions of K.A.R. 44–12–601, court appearances as ordered by the court, and by legal telephone calls.

Plaintiff McColpin has had attorneys listed on his approved phone call list including Lynette Petty and Kirk Lowry. Plaintiff McColpin was permitted to use the facility phone in the unit team office of his assigned cell house to contact Ms. Petty, Mr. Lowry, and Mr. Schoenhoffer in April and May, 1996.

Plaintiff McColpin stated that his confidential attorney/client phone call to his attorney Mark Schoenhoffer, was monitored on or around June 20, 1995. McColpin alleged that he knows this because security guard Matthew Howard repeated the confidential contents of that phone call to him[1]. Plaintiffs McColpin, Arney, Baker, and Bookless state that attorney/client phone calls using "facility phones" are routinely monitored by the unit team manager or security guards.

Notices which were placed in the yard and housing units at one time, advising inmates of monitoring on "inmate phones", have worn or been torn off. However, inmates are informed in the inmate handbook and on orientation videos of monitoring on inmate phones.

## CLAIMS

By previous Memorandum and Order filed July 30, 1996 (Doc. 162), the court articulated the four issues remaining in this action. Plaintiffs claim that the defendant unreasonably limits the telephone lists identifying persons with whom they may have telephone contact to 10 persons and modification of such lists to 120–day intervals; that defendant monitors attorney/client telephone calls; prohibits international telephone calls; and prohibits inclusion of public officials on their telephone lists. Plaintiffs assert that defendant's telephone policies unlawfully and arbitrarily restrict their rights to communicate with family, friends and attorneys without

---

1. Howard denied these allegations in materials submitted with defendant's motion for summary judgment.

legitimate purpose in violation of the First, Sixth and Fourteenth Amendments to the United States Constitution.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate only when the evidence, construed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The moving party has the burden of showing the absence of a genuine issue of material fact, and this burden "may be discharged by 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A party opposing a properly supported motion for summary judgment may not rest upon mere conclusory allegations or denials. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue for trial. *Id.; Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1230 (10th Cir.1990). In considering whether there exists a genuine issue of material fact, the court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "Affidavits are not a substitute for trial, and summary judgment is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence or decide upon competing inferences." *Cease v. Safelite Glass Corp.*, 911 F.Supp. 477, 480 (D.Kan.1995). In applying these standards, the court has construed all facts and reasonable inferences therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir.1991).

## FIRST AMENDMENT CLAIMS

■ Several general principles guide the court's consideration of the free speech and association claims presented. First, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). *See Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 2539–40, 53 L.Ed.2d 629 (1977). Inmates clearly retain protections afforded by the First Amendment, *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), such as the right to communicate with family and friends. Second, lawful "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) [*citing Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) ]. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security. *Pell v. Procunier*, 417 U.S. at 822–823, 94 S.Ct. at 2804. The United States Supreme Court has often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, "who are actually charged with and trained in the running of the particular institution under examination." *Bell v. Wolfish*, 441 U.S. at 562, 99 S.Ct. at 1886; *O'Lone*, 482 U.S. at 86–87, 107 S.Ct. at 2260–61; *see Turner v. Safley*, 482 U.S. at 349, 107 S.Ct. at 2404. Especially "[w]here a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities." *Safley*, 482 U.S. at 85, 107 S.Ct. at 2259.

■ To ensure that courts afford appropriate deference to prison officials, the Supreme Court has determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *See e.g., Jones*, 433 U.S. at 128, 97 S.Ct. at 2539. The Supreme Court has stated the proper standard:

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. at 89, 107 S.Ct. at 2261; *Hayes v. Marriott*, 70 F.3d 1144, 1146 (10th Cir.1995). In applying this standard, courts are to consider the following factors: (1) whether there is a valid rational connection between the prison regulation or practice and a legitimate governmental interest; (2) whether the regulation or practice allows inmates an alternative means of exercising the subject constitutional right; (3) the impact of accommodation of the asserted right on guards, other inmates, and the allocation of resources generally; and (4) the absence of ready alternatives to the regulation or practice. *Turner v. Safley*, 482 U.S. at 89–91, 107 S.Ct. at 2261–63; *Hayes v. Marriott*, 70 F.3d 1144, 1146–47 (10th Cir.1995).

## DISCUSSION

The parties to this lawsuit agree that the *Turner v. Safley* standard should be applied in this case. Some courts considering the issue of restricted telephone access have expressed the opinion that inmate use of a telephone is not a right at all, but merely a privilege extended by the correctional facility to foster continued communication with family and friends outside the prison. Other courts have specified that an inmate's First Amendment rights include the right of access to the telephone. *See e.g., Keenan v. Hall*, 83 F.3d 1083 (9th Cir.1996); *Johnson v. Galli*, 596 F.Supp. 135, 138 (D.Nev.1984). In an unpublished opinion (a copy of which is attached), the Tenth Circuit Court of Appeals held that a prison inmate "has no constitutional right to make personal telephone calls". *Martinez v. Mesa County Sheriff*, 69 F.3d 548, 1995 WL 640302 (10th Cir.1995). Thus, the question of whether or not restricted telephone access impinges on a constitutional right is not settled. However, those courts considering prison telephone restrictions have agreed that an inmate has no right to *unlimited* telephone use. *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994); *Benzel v. Grammer*, 869 F.2d 1105, 1108 (8th Cir.), *cert. denied*, 493 U.S. 895, 110 S.Ct. 244, 107 L.Ed.2d 194 (1989); *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir.1982); *Fillmore v.*

*Ordonez*, 829 F.Supp. 1544, 1563–64 (D.Kan. 1993), *aff'd* 17 F.3d 1436 (10th Cir.1994); *see also Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986); *Gilday v. Dubois*, 124 F.3d 277, 293 (1st Cir.1997); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir.1988).

■ This court holds that a prisoner's right to telephone access, if any, is subject to rational limitations based upon legitimate security and administrative interests of the penal institution. *See Washington v. Reno*, 35 F.3d at 1100, *citing Strandberg*, 791 F.2d at 747. "The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Ordonez*, 829 F.Supp. at 1563–64. Restrictions placed upon the inmates' communication with others outside the prison walls should be examined to determine whether those requirements unconstitutionally restrict free speech. *Washington v. Reno*, 35 F.3d at 1100. This court proceeds to assess the "reasonableness" of the challenged restrictions in this case by applying the factors set forth in *Safley*.

As to the first factor, the court notes that the telephone restrictions at LCF are content-neutral and are unrelated to the purpose of suppressing expression. *See Safley*, 482 U.S. at 89–90, 107 S.Ct. at 2262. Clearly, the logical connection between the restrictions and the asserted goal of prison security is not so remote as to render the policies arbitrary or irrational. *Id.* Defendant, in exhibits in support of his motion for summary judgment, has articulated legitimate reasons for implementing the restrictions. Prison officials explained in sworn statements that telephone communication can be used to formulate escape plans and to arrange assaults and other violent acts and to harass persons outside the prison, and reasoned that limiting the number of persons inmates can call facilitates the prevention and investigation of such misuse.

Plaintiffs argue that defendant has no evidence that the restrictions serve a legitimate penological purpose. The court disagrees. In many court opinions, it appears to be assumed that a legitimate penological purpose is served by restrictions on telephone access. *See e.g., Carter v. O'Sullivan*, 924

F.Supp. 903, 909 (C.D.Ill.1996); *Mann v. Reynolds,* 828 F.Supp. 894, 906 (D.Okla. 1993), *aff'd in part,* 46 F.3d 1055 (10th Cir. 1995). In this court's opinion such a common sense assumption is warranted.

■ More importantly, prison managers and employees did present evidence in sworn depositions and affidavits that the restrictions serve legitimate penological aims at LCF. Plaintiffs' arguments seem to suggest that prison officials must provide statistics proving that such misuse has actually occurred at the prison or restrictive policies are invalid, and that defendant has not met this burden. There does not have to be sufficient proof in the record that inmate telephone use has actually led to an escape plot, fraud, or violence. *See Safley,* 482 U.S. at 93, 107 S.Ct. at 2264. "Responsible prison officials must be permitted to take reasonable steps to forestall ... threats to security, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot." *Jones,* 433 U.S. at 132–33, 97 S.Ct. at 2542. The "informed discretion of prison officials that there is potential danger may be sufficient for limiting rights even though this showing might be unimpressive if ... submitted as justification for governmental restriction of personal communication among members of the general public". *Id.* at 133, n. 9, 97 S.Ct. at 2542, n. 9.

Contrary to plaintiffs' position, the court finds that the burden is on plaintiffs to prove that prison officials have exaggerated their response to legitimate security concerns. In the absence of substantial evidence to that effect in the record, courts should ordinarily defer to the expert judgment of prison officials. *Pell,* 417 U.S. at 827, 94 S.Ct. at 2806; *Safley,* 482 U.S. at 86, 107 S.Ct. at 2260; *Wolfish,* 441 U.S. at 551, 99 S.Ct. at 1880; *Mann,* 828 F.Supp. at 903. Plaintiffs have not submitted substantial, convincing evidence that the challenged restrictions are not reasonably related to legitimate penological interests. As a result, "the considered judgment of the experts must control in the absence of prohibitions far more sweeping than those involved here." *Wolfish,* 441 U.S. at 551, 99 S.Ct. at 1880. The uncontroverted evidence indicates that responsible, experienced administrators have determined, in their sound discretion and expert opinions,

that less restricted phone privileges will jeopardize the security and order of the facility. *See Safley,* 482 U.S. at 87, 107 S.Ct. at 2260. As the Supreme Court reasoned:

"subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. [It] ... would also distort the decision making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand."

*Safley,* 482 U.S. at 87–89, 107 S.Ct. at 2260–62.

With regard to the second factor, the court finds that plaintiffs have significant alternative means to communicate through prison visitation and correspondence by mail. *See Pell,* 417 U.S. at 823–4, 94 S.Ct. at 2804–5; *Safley,* 482 U.S. at 88, 107 S.Ct. at 2261. These alternative means of communicating have not been clearly shown to be burdensome or insufficient. Plaintiffs do not convincingly allege that they were unable to write and to receive letters or visits from any person so that they were effectively deprived of all other means of expression. *See Safley,* 482 U.S. at 92, 107 S.Ct. at 2263. There is no evidence that plaintiffs were anything more than inconvenienced in their communications with family and friends.

Arney's statement that he was unable to telephone his wife and adopted children when they were out of the country does not show a denial of association and expression in violation of his First Amendment rights since alternatives were available. Moreover, Arney does not allege that he asked his unit manager to use the "facility phones" to make an international call or sought relief through the prison grievance procedures, but was denied.

Baker's statement that he has six children and could not include them all on his telephone list without excluding attorneys and other persons, also does not indicate that he was denied all means of communication or that he sought an exception through the grievance procedures. Nor does his claim that he was unable to phone his children for

40 days after a move state a constitutional violation especially since no evidence of an attempt to utilize administrative remedies is presented.

One plaintiff has 7 names on his phone list suggesting that is sufficient. Two others have more than 10 indicating exceptions are made. No plaintiff actually specifies names they would add to their lists, what names are already there and why they cannot be replaced, or emergency changes they have needed to make within any 120–day interval for what reasons. Moreover, no plaintiff details how his freedom of expression to a named individual has been impeded by the 10 name or 120–day limit. Statements that a son is not proficient at writing and a mother is 80 years old without more fall short of proof that First Amendment rights are abridged under defendant's telephone access policies. In sum, the facts alleged by plaintiffs in their pleadings and affidavits are conclusory and while they may have been sufficient to state a claim in the complaint, these general allegations and denials are simply insufficient to withstand summary judgment.

Thirdly, the court has considered the impact of accommodating the asserted constitutional right on the allocation of prison resources generally, the other inmates and the administration. The court may consider plaintiffs' evidence that an alternative would not be of substantial cost as relevant to this inquiry. However, plaintiffs arguments minimize the impact of their asserted right on KDOC resources by neglecting to take into account that the time it takes to approve a single inmate's telephone list and to randomly monitor calls as well as to enter changes unlimited by time or number into a data bank must be multiplied by the hundreds of inmates at LCF, not to mention a possible increase in the number of attorney numbers requiring verification.

Finally, the court finds that there are no obvious, easy alternatives to the current phone restrictions[2]. Other well-run prison systems, including the Federal Bureau of Prisons, have concluded that substantially similar restrictions are necessary to protect institutional order and security. In this case, the sought after alternative is the identical restriction, but just numerically less of it. Although it clearly would be more convenient for inmates to have less restrictions on their telephone access, it is not shown to be constitutionally mandated by the evidence proffered.

The only alternative suggested by plaintiffs would surely impose more than a *de minimis* cost on the pursuit of legitimate corrections goals. *See Mann,* 828 F.Supp. at 906. Prison officials testified they would not have the staff to listen to every inmate telephone call and would have a greater risk of missing a dangerous message and a much more difficult time of investigating them. The increased risk taken together with the added burden on staff resources supports the judgment of prison officials that this alternative is not obvious and easy.

The plaintiffs' desire to have this court change the restrictions to more than 10 names and less than 120 days is nothing more than an assertion that defendants must abide by the least restrictive alternative test of *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). *Safley* declared that not to be the proper legal standard.

In *Safley,* the dissent complained that a ban on inmate correspondence at the Renz prison could not be reasonably related to legitimate corrections goals because it was more restrictive than at other state institutions. The majority, stated that the Constitution "does not mandate a 'lowest common denominator' security standard, whereby a practice permitted at one penal institution must be permitted at all institutions." *Safley,* 482 U.S. at 93, 107 S.Ct. at 2264, *citing Bell v. Wolfish,* 441 U.S. at 554, 99 S.Ct. at 1882. The court may not require prison officials to set up and then shoot down every conceivable alternative method of accommodating plaintiff's First Amendment rights. *Id.*

■■■ The court concludes that the record clearly demonstrates that the limitations

---

**2.** This factor is not nearly as significant under these facts as it might be in a different case. Here, plaintiffs are not claiming that all restric-

tions on telephone access are unconstitutional. Were they making such an argument, the court could weigh distinct alternatives.

placed upon plaintiffs' telephone access were reasonably related to legitimate penological interests[3]. The Court finds as a matter of law that the system in place at LCF is not "unreasonable."

## ACCESS TO ATTORNEYS AND THE COURTS

Plaintiffs assert that the current telephone system violates their rights under the Sixth and Fourteenth Amendments to assistance of counsel and access to the courts by permitting the monitoring and recording of attorney/client telephone conversations. The legality of monitoring inmate calls to an attorney is not settled. It has been held that the presence of a custodial officer when prisoners place or receive a phone call is constitutionally objectionable. *See Moore v. Janing,* 427 F.Supp. 567, 576 (D.Neb.1976). It has also been held that prison officials may tape a prisoner's telephone conversations with an attorney if such taping does not substantially affect the prisoner's right to confer with counsel. *Tucker v. Randall,* 948 F.2d 388, 391 (7th Cir.1991).

 It is settled that prisoners do not forfeit their constitutional guarantee under the Fourteenth Amendment to "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977). Access to counsel is not only a right under the Sixth Amendment, but is one means of insuring access to the courts. *Mann,* 828 F.Supp. at 902. However, the Sixth Amendment does not require in all instances full and unfettered contact between an inmate and counsel. *See Mann,* 46 F.3d at 1060; *see also McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir.1993). The choice among various methods of guaranteeing access to the courts lies with prison administrators, not inmates or the courts. *Ishaaq v. Compton,* 900 F.Supp. 935, 941 (W.D.Tenn.1995).

## DISCUSSION

 In order to allege an unconstitutional restriction on the *Bounds* right of access, an inmate must plead and prove he was actually impeded in his ability to conduct a particular case. *See Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 2181, 135 L.Ed.2d 606 (1996); *see also Aswegan v. Henry,* 981 F.2d 313 (8th Cir.1992). Plaintiffs have made no showing of prejudice to pending or contemplated litigation—no court dates missed; no inability to make timely filings; no denial of legal assistance to which a plaintiff was entitled; and no loss of a case which could have been won. *Carter,* 924 F.Supp. at 912.

In *Fillmore v. Ordonez, supra,* an inmate's contention that at least three of his telephone calls seeking legal advice were monitored was found not to amount to a constitutional violation. The plaintiff did not contend that the claimed deprivation was caused by execution of any official policy or practice, and the evidence indicated the opposite: that prison policy precluded the monitoring of telephone conversations between inmates and their legal counsel. Likewise here, no evidence has been advanced that any policy exists to intentionally monitor all attorney calls, and defendant's evidence indicates that telephone calls to attorneys on "inmate phones" cannot be monitored.

 The court finds that there is no triable issue as to whether the system deprived the plaintiffs of reasonable opportunity to communicate with their attorneys. The only factual allegation alleged by any plaintiff to support the denial of access claim is that McColpin believed one of his calls to his attorney on an "inmate phone" was overheard by a guard. The purpose of Howard's surveillance during this call is not alleged to have been purposely to monitor McColpin's call, but to ensure security of the area. The occasional failure of a policy does not amount to a denial of access to the courts, particularly when no adverse consequences are alleged. The single event described, even taken as true, does not adequately support plaintiffs' claims of constitutional violation[4] and repre-

---

3. There is no lack of rationality in the limitations at KSP such as found objectionable in *Mann v. Reynolds,* 46 F.3d 1055, 1060 (10th Cir.1995).

4. If the LCF telephone system were shown to infringe on access, it could not be upheld without a showing of a rational connection between the telephone policy and legitimate security con-

sents nothing more than negligence. *See Wooden v. Norris*, 637 F.Supp. 543, 558 (M.D.Tenn.1986). Furthermore, the fact that attorney calls are automatically monitored on "facility phones" presents no infringement when inmates may make unlimited non-monitored calls on "inmate phones." The federal courts do not sit to determine whether prisons are well-managed[5], but to discern whether there has been a constitutional violation. *Lewis v. Casey*, 518 U.S. at 349, 116 S.Ct. at 2179.

Defendant's evidence indicates that attorney phone calls on easily accessed "inmate phones" are neither monitored nor recorded. Plaintiffs' unsupported assertions or fears to the contrary are insufficient to withstand summary judgment.

Plaintiffs' conclusory claims that international calls and calls to public officials are prohibited are simply not supported by adequate factual allegations or any evidence. Defendant's uncontroverted evidence shows that international calls may be made from "facility phones" and calls to public officials from either inmate or facility phones.

Even viewing the record in the light most favorable to the plaintiffs, no reasonable jury could find that the telephone system at LCF violates the plaintiffs' constitutional rights. The court concludes that defendant has not unduly infringed upon either the plaintiffs' right of association or their right of access to the courts or counsel. In sum, no material facts are in dispute and the court concludes that the defendant is entitled to judgment as a matter of law.

IT IS THEREFORE BY THE COURT ORDERED that defendant's motion for summary judgment (Doc. 168) is sustained, that this action is dismissed and all relief is denied.

IT IS FURTHER ORDERED THAT plaintiff's motion to strike (Doc. 175) defendant's exhibit 3 is granted only as to paragraphs 8 and 14 and denied as to the remainder of the affidavit.

IT IS SO ORDERED.

NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir.Rule 36.3 until December 31, 1995, or further order.

(The decision of the Court is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.)

Sireino MARTINEZ, Plaintiff–Appellant,

v.

MESA COUNTY SHERIFF, Mesa County Undersheriff, Defendants–Appellees.

Consolidated [FN1] Nos. 95–1154, 95–1157 (D.C.Nos.95–S–458, 95–S–338) (D.Colo.).

FN1. We order that these appeals be consolidated under Fed. R.App. P. 3(b).

United States Court of Appeals, Tenth Circuit.

Nov. 1, 1995.

ORDER AND JUDGMENT [FN2]

FN2. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order. 151 FRD 470(10th Cir.1993).

---

cerns, and that such policy complies with the four factor analysis established in *Turner v. Safley. Mann*, 46 F.3d at 1057. Even if the court found an infringement in this case, it would conclude under the four factor analysis that a rational connection is apparent.

5. If the court had the authority to oversee prison management of the telephone system, it would urge written notice of procedures and appropriate circumstances in which to seek the available exceptions to the general restrictions.

Before TACHA, LOGAN and KELLY, Circuit Judges.[FN3]

FN3. After examining the briefs and appellate record, this panel had determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. 34(a); 10th Cir. R. 34.1.9. The cause therefore is ordered submitted without oral argument.

KELLY, Circuit Judge.

\* *1 Plaintiff Sireino Martinez, appearing pro se and in forma pauperis, appeals from the district court's dismissal of his civil rights complaints. We exercise jurisdiction under 28 U.S.C. 1291, and affirm.

Mr. Martinez is incarcerated at the Mesa County, Colorado, Detention Facility. He does not allege whether he is a pretrial detainee or a convicted felon. He brought these two actions pursuant to 42 U.S.C. 1983, alleging violations of his constitutional rights. In appeal No. 95–1154, Mr. Martinez alleges that the telephone policy outlined in the prison's inmate handbook is a violation of his rights because his request to make a personal telephone call to his mother following the death of his aunt was denied, and because he was only permitted to place one telephone call to the hospital where his father was a patient following a heart attack. Mr. Martinez further alleges that these denials of his requests to use the telephone constituted retaliation against him for filing a related suit against the Mesa County Sheriff, as well as discrimination as a result of his cousin running for election against the sheriff. In No. 95–1157, Mr. Martinez makes similar allegations arising out of the denials of his requests to make personal telephone calls using the prison phone system.

On review, we construe Mr. Martinez's pro se complaint liberally. Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Ruark v. Solano, 928 F.2d 947, 949 (10th Cir.1991). Nevertheless, we are obligated to dismiss Mr. Martinez's 1983 claim if he cannot allege that the defendants, acting under color of state law, deprived him of an existing constitutional right. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Mr. Martinez has no constitutional right to make personal telephone calls, and thus, his 1983 claim must be dismissed. See Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Mr. Martinez argues that the prison's Inmate Handbook confers upon him the right to make telephone calls. However, as the Supreme Court recently stated in Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), while prison regulations may in some instances "create liberty interests which are protected by the Due Process Clause [,] . . . . these interests will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Mr. Martinez's list of grievances plainly constitutes nothing beyond the ordinary hardships of prison life. Furthermore, we find no support in the record to support Mr. Martinez's allegation of retaliation or discimination.

The judgment of the district court is AFFIRMED.