732 F.2d 253
 21 ERC 1208, 14 Envtl. L. Rep. 20,356
 SIERRA CLUB, et al., Plaintiffs-Appellees,
v.
UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants,
and
City of New York, Defendant-Intervenor,
William C. Hennessy, as Commissioner of the New York State
Department of Transportation, Defendant-Appellant.
 No. 694, Docket 83-6321.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 13, 1983.
Decided March 7, 1984.
 
 Albert K. Butzel, New York City (Mitchell S. Bernard, Jean M. McCarroll, Butzel & Kass, New York City, of counsel), for plaintiffs-appellees Sierra Club, et al.
 Paul J. Curran, New York City (Bruce Margolius, Kaye, Scholer, Fierman, Hays & Handler, New York City, of counsel), for defendant-appellant New York State Dept. of Transp.
 Before MESKILL, KEARSE, and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 This appeal is from an order denying an application to modify an injunction that called a halt to Westway, the proposed West-side super highway in Manhattan. The New York State Department of Transportation (State) appeals from an October 31, 1983 order of the United States District Court for the Southern District of New York (Griesa, J.) denying its application to modify an injunction in order to permit it to continue certain preliminary design and engineering work on the Westway project. Since this project has not entered its final administrative phase, this appeal does not present the ultimate question of whether Westway will in fact be built. What is before us is a skirmish along the way to that ultimate decision. The particular question for our decision is whether the State was properly enjoined from either applying for federal funds or spending its own funds for design and engineering work. We agree with the State that instead of maintaining the status quo while further study on the Hudson fisheries proceeds, the broad injunction granted by the district court on October 31 makes it nearly certain that Westway will not be built.
 
 BACKGROUND
 
 2
 Following two trials before Judge Griesa and two decisions by this court in Sierra Club v. United States Army Corps of Engineers, 701 F.2d 1011 (2d Cir.1983) (Kearse, J.), and Sierra Club v. Hennessy, 695 F.2d 643 (2d Cir.1982) (Meskill, J.), it has now been established that the National Environmental Policy Act, 42 U.S.C. Sec. 4332, (NEPA) and the Clean Water Act, 33 U.S.C. Sec. 1344, were violated. At present, this constitutes the sole obstacle to Westway's construction. The details set forth in our previous decisions, familiarity with which is assumed, have thoroughly chronicled the Westway saga. Accordingly, the background of this highway project need only be stated in conclusory form.
 
 
 3
 The Westway project has been at different times from the early 1970's either a dream or nightmare of New York State governors and New York City mayors. As presently contemplated, the six lane mostly underground highway portion will run from the Battery to 42nd Street bordering the Hudson River on the West side of Manhattan. About 200 acres of the Hudson will need to be landfilled to complete the project. On the roof over the highway a 93 acre park will be planted. Residential and commercial development is also envisioned. Approval of Westway as a link in the interstate highway system made New York State eligible for 90 percent federal funding for the highway portion of the Westway project. When New York State filed a dredge-and-fill permit for the interpier area questions were raised of the landfill's effect on the Hudson River fisheries. The required Environmental Impact Statement (EIS) had been based on a 1973 survey conducted by one of the project's outside consultants and had, in substance, concluded that the interpier area was a "biological wasteland," i.e., few fish lived there. To say the least, this conclusion was an overstatement since samplings in 1979 showed a significant fish population in the interpier area. This fact was never fully revealed to the Army Corps of Engineers, which failed to make its own evaluation. In 1981 the Sierra Club instituted an action against New York and the Army Corps of Engineers. After a trial Judge Griesa found that the interpier area houses young striped bass--one of America's good game and commercial fish--and that this area of the Hudson is an important and productive habitat for them. He concluded that the EIS filed in 1977, based on the 1973 survey, violated federal law because it did not accurately report or adequately respond to the possible adverse effect of the Westway landfill upon the fish resources--particularly striped bass--of the lower Hudson. As a result, he set aside the landfill permit previously issued by the U.S. Army Corps of Engineers and early in 1983 directed it to conduct a further study of the fisheries issue and produce a suitable EIS addressing this problem before the project could continue.
 
 
 4
 With this background, we turn to the controversy presently before us. In a series of orders--on April 14 and July 23, 1982--most of the construction work as well as applications by the State for federal funding were enjoined by Judge Griesa. On November 12, 1982, while appeals from the two previous orders were pending in this Court, a Supplemental Judgment signed by Judge Griesa modified those prior orders principally by permitting the State to continue certain activities, i.e., by authorizing the State to apply to the Federal Highway Administration for funding certain specific activities. In effect, the district court was allowing, as it said, "a holding operation so the organization and so forth remains in being, in case Westway goes forward at a later point." The authorization in the Supplemental Judgment, which by its own terms expired April 30, 1983, was later extended to authorize expenditures until July 31, 1983. Two weeks before that date the State moved for further modification of the earlier orders, requesting that additional planning and design work be permitted to go forward with federal funding for 15 months commencing on August 1, 1983. The State maintained that were the preliminary work to be stopped dead in its tracks in 1983, it would not be able to complete its contractual arrangements prior to the September 30, 1990 cut-off date for federal highway funding. After considering the State's argument, the district court on October 31, 1983 denied most of the relief sought and, in addition, enjoined the State from spending its own funds on the project.
 
 
 5
 From this order that denied the motion seeking modification of the orders of April 14 and July 23, 1982, the State has appealed. It contends that the district court's October 31 order converted what had been, in effect, a preliminary injunction arising from the earlier orders, into what was now a permanent one. The State further asserts that the district court misconstrued the import of the deadline in the Federal-Aid Highway Act, 23 U.S.C. Sec. 101(b); that it considered irrelevant matters in reaching its decision, e.g., the unlikelihood of federal funding for the proposed work; and that the vague and contradictory terms of the order failed adequately to inform the State as to what acts are forbidden and what are permitted. Finally, the State urges that enjoining the State from spending its own funds on the planning and design of Westway constituted an abuse of discretion. Before undertaking to review the district court's injunction of October 31, it is necessary first to decide what type of injunction it is.
 
 DISCUSSION
 
 6
 * An injunction is an equitable remedy issued under established principles which guide courts of equity. A preliminary injunction is issued to maintain the status quo until there can be a hearing on the merits. See Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738 (2d Cir.1953); Gas & Electric Securities Co. v. Manhattan & Queens Traction Corp., 266 F. 625, 632 (2d Cir.1920), appeal dismissed sub nom Begg v. New York City, 262 U.S. 196, 43 S.Ct. 513, 67 L.Ed. 946 (1923). A final or permanent injunction is granted only after a hearing on the merits, Capital City Gas Co. v. Phillips Petroleum Co., 373 F.2d 128, 131 (2d Cir.1967), and may not be changed in the interest of the defendants if the purposes of the litigation as incorporated in the decree have not been fully achieved, United States v. United Shoe Machinery Corp., 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968). An injunction is an ambulatory remedy that marches along according to the nature of the proceeding. It is executory and subject to adaption as events may shape the need, except where rights are fully accrued or facts are so nearly permanent as to be substantially impervious to change. See United States v. Swift & Co., 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). Thus, the nature and effect of the decree granting an injunction must be examined first when considering its modification.
 
 
 7
 A trial court's power to modify, like the power over all its orders, is inherent. Nonetheless Rule 60(b)(5) of the Federal Rules of Civil Procedure has stated this inherent power as a rule by noting that a court may relieve a party from a judgment where "it is no longer equitable that the judgment should have prospective application." When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place. But a court may modify a final or permanent injunction only where conditions have so changed as to make such relief equitable, i.e., a significant change in the law or facts. In United States v. Swift, supra, the Supreme Court indicated that modifying a permanent decree involves a balance between the policies of res judicata and the right of a court to apply modified measures to changed circumstances, or a balance between rights impervious to change as against those tentative and subject to changing conditions. See System Federation v. Wright, 364 U.S. 642, 647-648, 81 S.Ct. 368, 371-372, 5 L.Ed.2d 349 (1961).
 
 
 8
 The Sierra Club argues that the injunction which the State seeks to modify here is not akin to a preliminary injunction. In claiming that the injunction was "final" it argues that modification may only be granted in unusual circumstances. The State, on the other hand, asserts that the injunction in question is more in the nature of a preliminary injunction and that it is subject to modification when necessary to preserve the status quo. The State further claims that its application to modify should not have been judged by the stricter standard of a significant change in circumstances and asserts that the district court should have applied general equitable principles in balancing the parties' interests.
 
 
 9
 A district court's modification of an injunctive decree will not be disturbed on appeal, absent a showing that the court abused its discretion. The test of that discretion is measured by whether the requested modification effectuates or thwarts the purpose behind the injunction. See Chrysler Corp. v. United States, 316 U.S. 556, 562, 62 S.Ct. 1146, 1149, 86 L.Ed. 1668 (1942). Thus, when reviewing an order modifying a preliminary injunction we look to see whether or not the status quo is maintained by the modification; conversely, in the case of a final or permanent injunction, the inquiry on appeal is whether there has been such a change in the circumstances as to make modification of the decree equitable.
 
 
 10
 The injunction in this case, which was issued on the merits after a hearing, prevents any further activity under the voided land-fill permit. Yet, the fact that a hearing was held does not transform its provisional status from one designed to maintain the status quo into a permanent edict. The fisheries problem and the injunction which protects their habitat represents merely one piece of an ongoing and multifaceted project. The injunction was issued as a temporary "hold" in activity while the U.S. Army Corps of Engineers prepares a suitable EIS. Judge Griesa clearly did not intend by his orders to halt Westway permanently--only properly to insist that the requirements of federal law were met along each step of the way. Therefore, the district court need only have applied the same discretion as it had originally, and not require proof of a significant change in circumstances. Accordingly, we conclude that the injunction before us is more in the nature of preliminary injunction and in the discussion that follows we treat the decree sought to be modified as such. This view is especially appropriate where "public consequences" are implicated as we were at pains to point out in Sierra Club v. Hennessy, supra, 695 F.2d at 649.
 
 II
 
 11
 We turn to the merits of the State's other contentions. It argues that the district court's misconstruction of the Federal-Aid Highway Act of 1976, 23 U.S.C. Sec. 101(b), mandates that the October 31 order be vacated. Section 101(b) sets forth the "intent of Congress that the Interstate System be completed as nearly as practicable over the period of availability of the thirty-four years' appropriations authorized for the purpose of expediting its construction ... through the fiscal year ending September 30, 1990 ...." The State argues that such language establishes a cut-off date. The Westway Project Director estimates that the preliminary design (system-wide designs) schedule will take several years and the final design (designs of specific portions of the project) will also take about two or three years. He concludes that if the State is not permitted to do the necessary preliminary design work now, it will not be able to complete the project by September 30, 1990. The Sierra Club responds that this is an irrelevant consideration and that were there to be difficulty meeting Congress' funding deadline, such problem is one for the State and Congress to resolve. The district court noted in its order that "nothing in Sec. 101(b) precludes [further] funding" and believed that the statute expressed only a declaration of intent and did not set a deadline. We disagree.
 
 
 12
 While Congress may, in its wisdom, furnish additional appropriations to fund federal highways after September 1, 1990, it also may choose not to do so. New York is attempting to build Westway with presently authorized appropriations for the Interstate System and obviously any delays in design work or otherwise will have an impact on the approaching deadline. See 23 U.S.C. Sec. 118(b)(2) (Supp. V 1981). The simple fact that Congress authorized appropriations until September 30, 1990 is totally dispositive. Absent a clearly contrary expression of legislative intent, the statutory language is ordinarily regarded as conclusive. Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Whether the law may later be amended misses the mark completely, since a court is required to apply the law then in effect at the time it makes its decision. Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Otherwise, courts would overstep their bounds and intrude into the domain reserved to Congress. Northwest Airlines, Inc. v. Transport Workers Union, 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981). It was therefore legally incorrect for the judge below not to weigh properly the statutory deadline in the course of balancing the equities.
 
 III
 
 13
 The next issue raised by the State need not detain us long. It claims that the district judge relied on a letter from a middle-level administrator on a matter involving the Federal Highway Administration's funding policy. The letter, prepared in response to an inquiry of the court, indicated that the administrative agency would authorize and obligate federal funds to pay for completion of activities already underway; but that the agency would not normally fund new work, such as start-up of new designs, until the NEPA process had been satisfactorily completed and the Corps of Engineers had issued a landfill permit. The State contends that, while the trial court might properly have taken judicial notice of the administrative regulations, for it to accept such a letter as proof instead of receiving testimony or at least an affidavit was error. The point is--the State continues--that the regulations contain emergency exceptions to the normal funding rules as well as the right to an administrative appeal, neither of which were noted by the trial court.
 
 
 14
 This is much ado about nothing. Judge Griesa carefully stated that he was not bound by the administrative agency's funding policy. Further, the letter merely said that new work funding "normally" would not be authorized, which is broad enough to meet the State's complaints. Accordingly, we can find no abuse of discretion by the district court when it considered the federal agency's policy and regulations.
 
 IV
 
 15
 We address the State's last two objections together since one is an outgrowth of the other. The State first contends that the October 31 order is vague and contradictory because it mischaracterizes the district court's past orders and therefore fails adequately to inform the State as to what is forbidden and what is permitted under its terms. We need not enter into an analysis of this contention because the October 31 order also enjoined the State from spending its own funds on the planning and design of Westway. Resolution of this latter issue standing alone requires reversal.
 
 
 16
 Although this wide-ranging prohibition appeared for the first time in the October 31 order, the district court mistakenly believed that it had previously specifically "denied permission to the State to continue with the general engineering or preparatory work for Westway." It drew this conclusion from a statement made from the bench on April 27, 1982. In its October 31 decision Judge Griesa quoted his April 27 ruling, which speaks for itself:
 
 
 17
 I am going to enjoin the latter category [that in which there is no contractual commitment between New York and an outside contractor], and that injunction can run ... against the State of New York ... and the reason that I feel that this kind of an injunction against these payments is necessary is that the record shows that these proposed expenditures relate to preparations for Westway as now planned involving landfill. They would result in calls upon the Federal Highway Administration for federal funds ....
 
 
 18
 Plainly, the quoted statement had not previously enjoined the State from expending its own funds to engage in preliminary planning and design activities necessary to maintain the status quo of the project.
 
 
 19
 The Sierra Club argues, nonetheless, that the district court has authority to enjoin the State where, as here, there is a Federal-Aid Highway project like Westway which makes the State and the federal government "partners" in the enterprise. It further maintains that the expenditure of funds that have been enjoined from being spent by either of the partners violates the injunction and injures the public. Case law is to the contrary. Decisions using the partnership rationale to justify issuance of an injunction involve a party that has been the recipient of federal funds. While here the State of New York seeks federal highway funding, it is not yet a recipient. Without that necessary nexus the predicate for enjoining the State on the partnership rationale falls. See Biderman v. Morton, 497 F.2d 1141, 1147 (2d Cir.1974); Proetta v. Dent, 484 F.2d 1146, 1148 (2d Cir.1973).
 
 
 20
 The decision by New York to spend its own funds on preliminary design and engineering work may or may not be wise. Obviously, the money spent by the State on design work will be wasted if Westway is not ultimately built. Nevertheless, the wisdom of that gamble is for the State to assess. See National Wildlife Federation v. Goldschmidt, 677 F.2d 259, 264 (2d Cir.1982).
 
 
 21
 Accordingly, the order of October 31 is reversed and this matter is remanded to the district court with directions to modify the injunction in a manner consistent with this opinion.