423 F.3d 137
 WEIGHT WATCHERS INTERNATIONAL, INC., Plaintiff-Counter-Defendant-Appellant,
v.
LUIGINO'S, INC., Defendant-Counter-Claimant-Appellee.
Docket No. 04-4103-CV.
 United States Court of Appeals, Second Circuit.
 Argued: June 2, 2005.
 Decided: September 12, 2005.
 
 1
 Kerry L. Konrad, Simpson Thacher & Bartlett, LLP, New York, N.Y. (Jennifer R. Rackoff, Joel Zighelboim and Tai-Heng Cheng on brief), for Plaintiff-Counter-Defendant-Appellant.
 
 
 2
 George G. Eck, Dorsey & Whitney LLP, Minneapolis, MN (Bruce R. Ewing, New York, N.Y. on brief), for Defendant-Counter-Claimant-Appellee.
 
 
 3
 Before: STRAUB and HALL, Circuit Judges, and KAPLAN, District Judge.*
 
 
 4
 KAPLAN, District Judge.
 
 
 5
 Plaintiff Weight Watchers International, Inc. ("Weight Watchers") appeals the denial of its motion to modify a preliminary injunction in a trademark infringement suit.
 
 
 Background
 
 
 A. The Original Packaging
 
 
 6
 Weight Watchers is a leading provider of weight loss products and services. Since 1997, it has offered a diet plan known as the POINTS or Winning Points plan in which foods are given a point value based on the number of calories and grams of fat and fiber they contain. Weight Watchers members are assigned a points range principally based on their body weight and may eat what they choose so long as the total point value of the food they eat throughout the day does not exceed their assigned ranges.
 
 
 7
 Weight Watchers registered the terms "POINTS" and "Winning Points" pursuant to the Lanham Act, 15 U.S.C. §§ 1051 et seq. In addition to using the POINTS and Winning Points marks in guides that list the point values for some 15,000 common supermarket items, it has licensed the mark for use in connection with the sale of packaged, including frozen, foods.
 
 
 8
 Defendant Luigino's Inc. ("Luigino's") is a maker of frozen foods and the owner of the Michelina's Lean Gourmet brand of frozen food. In early 2003, it began to market a line of Michelina's Lean Gourmet frozen meals that prominently displayed in a box on the lower left corner of the front panel of each package the amounts of fat grams and total calories in the product, as well as the point value. Next to the word "POINTS" was an asterisk. On the back of the package was another asterisk accompanied by a disclaimer that stated, inter alia, that "POINTS" is a registered trademark of Weight Watchers, that Luigino's had calculated the point value of the product, and that such use of the term POINTS was not intended to imply sponsorship or approval by Weight Watchers.[1] For example, the front face of its Michelina's Lean Gourmet Pasta in Wine and Mushroom Sauce with White Chicken contained a box stating that the product had 6 grams of fat, 290 calories and 5 Points with an asterisk, apparently intended to refer consumers to the back of the package where the disclaimer appeared.
 
 
 9
 After becoming aware of the packaging, Weight Watchers brought claims against Luigino's under the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) and (c), as well as New York statutory and common law, and sought a preliminary injunction. The district court held hearings on May 2 and 30, 2003 at which Weight Watchers submitted survey evidence showing that potential consumers were likely to be confused by the packaging and believe that Weight Watchers either had calculated or verified the point values displayed on the package fronts of the Michelina's Lean Gourmet products.
 
 
 10
 At the May 30, 2003 hearing, the court below found that the term "POINTS" on the front of the package was intended to refer to Weight Watchers' trademarked POINTS or Winning Points diet plan and that it was likely to confuse consumers into believing that Weight Watchers had assigned the POINTS to, or otherwise endorsed, the Michelina's Lean Gourmet products. It then said that it would enjoin Luigino's from using the packaging. In doing so, however, the court stated that "Luigino's is entitled . . . to present information which would be of interest to persons buying its product."
 
 
 11
 On June 30, 2003, the district court issued a written order enjoining Luigino's from using the packaging. The second paragraph provided that
 
 
 12
 "it shall not be a violation of this order for Luigino's, in its packaging, to convey accurate factual information concerning the POINTS values of products, provided that Luigino's states, as part of such information, that Luigino's or Michelina's has calculated such values. If this is done, it is to be according to the guidelines expressed by the court at the May 30, 2003 hearing."
 
 
 13
 The exact nature of the guidelines referred to is unclear. Weight Watchers contends that, at the very least, they include the district court's suggestion during the May 30, 2003 hearing that "there [be] as great an effort as possible to avoid any idea that Weight Watchers sponsors or approves or endorses this product." Luigino's, however, takes refuge in the suggestion of the district court that the confusion might be resolved by having "the entire slogan printed in the same size print so that nothing is so strongly emphasized that other parts will be ignored." In any event, neither party appealed this order.
 
 
 B. The New Packaging
 
 
 14
 In June 2003, Luigino's came out with new packaging for its line of Michelina's Lean Gourmet frozen products. The new packaging, which is very similar to the original, contains a text box on the lower left front corner. "[N] Points* As Calculated by Michelina's" is printed in one half of the box. The entire slogan is printed in the same font and type size. The numbers of calories and fat grams in the product is printed in the other half of the box. Next to the reference to the point value is an asterisk. On the back of the package in small type beside another asterisk is a disclaimer similar to that on the original packaging.[2]
 
 
 15
 The new packaging began to appear in supermarkets in June or July of 2003. It came to the attention of Weight Watchers some time over the summer of 2003. Weight Watchers claims that it then did informal testing on the product, which indicated that consumers might find it confusing. On September 24, 2003, counsel for Weight Watchers objected to the new packaging, and suggested that the parties engage in consumer testing to determine the effect of the disclaimer. Luigino's did not respond. Weight Watchers then commissioned a consumer survey concerning the new packaging.[3] It was completed by the end of November 2003.
 
 
 16
 On January 16, 2004, Weight Watchers moved to modify the preliminary injunction to enjoin the use of the new packaging. In due course, the district court held a hearing. Weight Watchers offered its survey evidence and argued that the addition of the phrase "As Calculated By Michelina's" did not overcome the likelihood of confusion posed by Luigino's' use of the Points mark on the front of its packaging.
 
 
 17
 Luigino's offered no evidence as to whether its new packaging was likely to confuse customers. It relied entirely on the packaging itself and an affidavit from a consumer psychologist that criticized the design, methodology and conclusions of Weight Watchers' consumer survey.
 
 
 18
 The court below determined that Weight Watchers' survey evidence was flawed and gave it no weight in its analysis. It then examined the new packaging, concluding that common sense dictated that the Points mark on the front in combination with the statement "As Calculated By Michelina's" was not likely to confuse consumers. It did, however, find that the disclaimer on the back was unreadable.
 
 
 19
 In an order dated June 24, 2004, the court denied so much of Weight Watchers' motion as sought to enjoin the use of its Points trademark on the front of the Michelina's Lean Gourmet products and granted it to the extent that Luigino's was enjoined from using the small-print disclaimer it then had on the back of the box. The order further approved a more readable disclaimer that Luigino's had adopted after the hearing and prior to June 24. This appeal followed.
 
 
 Discussion
 
 
 20
 The decision whether to modify a preliminary injunction involves an exercise of the same discretion that a court employs in an initial decision to grant or deny a preliminary injunction. See Sierra Club v. United States Army Corps of Engineers, 732 F.2d 253, 256 (2d Cir.1984). We therefore review the denial of a motion to modify a preliminary injunction for abuse of discretion. Id. at 257. A court abuses its discretion where it "applies an incorrect legal standard," Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir.1997), or bases its ruling on clearly erroneous findings of fact. Register.Com, Inc. v. Verio, Inc., 356 F.3d 393, 398 (2d Cir.2004); Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 121 (2d Cir.2001).
 
 
 A. Appellate Jurisdiction
 
 
 21
 Luigino's first contends that we do not have jurisdiction over the appeal. It argues that Weight Watchers' motion to modify was, in substance, an attempt to obtain reconsideration of the second paragraph of the district court's preliminary injunction of June 30, 2003. It maintains that the June 24, 2004 order merely clarified the preliminary injunction and that this is but an untimely appeal of the preliminary injunction.
 
 
 22
 Section 1292(a)(1) of the Judicial Code, 28 U.S.C. § 1292(a)(1), permits appeals of all orders granting, modifying, dissolving, refusing, or refusing to dissolve or modify an injunction. An order reconsidering or interpreting a preliminary injunction consequently is not appealable. See Wilder v. Bernstein, 49 F.3d 69, 72 (2d Cir.1995); accord Assoc. of Cmty. Orgs. for Reform Now (ACORN) v. Illinois State Bd. of Elections, 75 F.3d 304, 306 (7th Cir.1996); In re Ingram Towing Co., 59 F.3d 513, 516 (5th Cir.1995); Mikel v. Gourley, 951 F.2d 166, 168-69 (8th Cir.1991). Whether an order interprets or modifies an injunction is determined by its actual effect. Sierra Club, 732 F.2d at 256; accord Favia v. Ind. Univ. of Pa., 7 F.3d 332, 337 (3d Cir.1993). An interpretation does not change the status of the parties, while a modification "alters the legal relationship between the parties, or substantially change[s] the terms and force of the injunction." Mikel, 951 F.2d at 169 (internal quotation marks and citation omitted). We therefore consider the effect of each order and its relationship to the other.
 
 
 1. The June 30, 2003 Order
 
 
 23
 The object of the order of June 2003 was to enjoin the packaging that Luigino's then was using. The first paragraph of the order accomplished that result and limited the injunction to the precise packaging design at issue.
 
 
 24
 As noted, the second paragraph stated that it would not be a violation of the order for Luigino's to convey factual information about its product (i.e., the Point value of the frozen meal) so long as it stated that it had calculated the values and did so in a manner consistent with the court's guidelines at the May 30, 2003 hearing. Luigino's asserts that the second paragraph therefore resolved the question of the disclaimer.
 
 
 25
 The second paragraph of the order was problematic in a number of respects. First, it was entirely hypothetical in that neither Weight Watchers nor the district court knew how Luigino's might use the Points mark in the future. The district court therefore was not in a position to determine whether any such use would not be confusing so long as the package somewhere contained a statement that "Luigino's or Michelina's ha[d] calculated" the Points value.
 
 
 26
 Second, it did not restrain any party from doing anything and was vague with regard to how it might be satisfied. Although we do not inquire into the validity of the underlying preliminary injunction on a motion to modify, see, e.g., Lichtenberg v. Besicorp Group Inc., 204 F.3d 397, 401 (2d Cir.2000) (citing 16 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3924.2, at 208-09 (2d ed.1996)), this aspect of the order did not satisfy Federal Rule of Civil Procedure 65(d), which provides, in pertinent part, that "[e]very order granting an injunction ... shall be specific in terms, shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Here, the second paragraph did not "describe in reasonable detail" the line between the forbidden and permitted and incorporated by reference "guidelines" set forth orally at the May 30, 2003 hearing. FED. R. CIV. P. 65(d). Moreover, it is not clear what the guidelines enunciated at the hearing were. In short, the lower court's statement on what type of packaging would not violate the injunction was dictum. Indeed, it is more than arguable that Weight Watchers could not have appealed this order even if, as Luigino's suggests, it had been unhappy with the second paragraph because the first paragraph granted all the relief it sought. See Concerned Citizens of Cohocton Valley, Inc. v. New York State Dep't of Envtl. Conservation, 127 F.3d 201, 204 (2d Cir.1997) ("Because standing to appeal is conferred only on parties `aggrieved' by the judgment, a party generally does not have standing to appeal when the judgment terminates the case in his favor."); see also California v. Rooney, 483 U.S. 307, 311, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987) (court reviews judgments, not statements in opinions, and a prevailing party therefore may not appeal a ruling in its favor in order to obtain review of its reasoning).
 
 
 2. The June 24, 2004 Order
 
 
 27
 Weight Watchers' motion of January 2004 arose as a result of a change in circumstances—the introduction of the new packaging. Its object was to extend the injunction to enjoin the new design.
 
 
 28
 The district court already had determined, in granting the preliminary injunction, that Luigino's use of the Points mark on the front of its packaging was confusing. This was the law of the case and not at issue. Rather, the motion to modify raised a different question: whether the addition of the disclaimer to the front panel of the new packaging was sufficient to avoid confusing customers or, instead, whether the use of Weight Watchers' mark on the new package also should be enjoined.
 
 
 29
 To be sure, the disclaimer issue had been raised at argument on the motion for a preliminary injunction. But nothing had or could have been resolved. By contrast, the disclaimer was the only subject of the motion to modify and granting the motion would have extended the injunction to the new packaging.
 
 
 30
 In sum, the motion to modify sought to alter "the terms and force of the injunction." Mikel, 951 F.2d at 169. Its denial therefore is appealable pursuant to 28 U.S.C. § 1292(a)(1).
 
 
 B. The Merits
 
 
 31
 Luigino's argued below, and the district court apparently agreed, that Weight Watchers had the burden of establishing that Luigino's use of the Points mark on the new packaging was likely to confuse customers.[4] The district court treated the motion to modify as if it were a new preliminary injunction motion on which Weight Watchers had to show threatened irreparable harm and a likelihood of success on the merits or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor. See Brennan's Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 129 (2d Cir.2004).
 
 
 32
 To be sure, a party seeking to extend a preliminary injunction must establish its entitlement to relief. See, e.g., Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc., 832 F.2d 1317, 1321 (2d Cir.1987) (burden on party seeking to enjoin new packaging); LeSportsac, Inc. v. K Mart Corp., 754 F.2d 71, 80 (2d Cir.1985) (burden on party seeking to enjoin new product), abrogated on other grounds as stated in Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1042 (2d Cir.1992). In this case, however, Luigino's altered its packaging simply by adding the statement to the front that Michelina's had calculated the point value. Where, as here, an infringer attempts to avoid a substantial likelihood of consumer confusion by adding a disclaimer,[5] it must establish the disclaimer's effectiveness. See ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy, 314 F.3d 62, 70-71 (2d Cir.2002); Jim Beam Brands Co. v. Beamish & Crawford, Ltd., 937 F.2d 729, 737 (2d Cir.1991); Charles of the Ritz Group Ltd., 832 F.2d at 1324; Home Box Office, Inc. v. Showtime/The Movie Channel, Inc., 832 F.2d 1311, 1315 (2d Cir.1987).
 
 
 33
 In this case, the district court found on the motion for a preliminary injunction that the use of the term "Points" on the front of the package was likely to confuse consumers into believing that Weight Watchers had determined the point values or otherwise endorsed the Luigino's products. As presented in the motion to modify, the new packaging was very similar to the original. And while the disclaimer on the new packaging arguably dealt with the implicit claim that Weight Watchers had calculated the point values, it did not address the issue of implicit endorsement. In all the circumstances, Luigino's did not sustain its burden, and the district court lacked a sufficient basis to conclude that the disclaimer solved the problem.[7]
 
 
 C. Irreparable Harm
 
 
 34
 Luigino's next argues that even if the district court erred, its denial of the motion to modify the injunction should be upheld because Weight Watchers delayed unduly in bringing the motion.
 
 
 35
 A plaintiff who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury. This presumption may be defeated, however, when a party has delayed in seeking injunctive relief. Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir.1995). "[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Id. (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir.1985) (internal quotation marks and citation omitted)). The same reasoning suggests that undue delay in seeking a modification of a preliminary injunction in a case like this also may warrant denial of relief.
 
 
 36
 Here, the new packaging came out some time in June 2003, and Weight Watchers discovered it, at the very latest, by September. It then conducted informal testing, and counsel for Weight Watchers contacted counsel for Luigino's on September 23, 2003 in an attempt to resolve the situation. When this effort was unsuccessful, it conducted more consumer testing in October and November. It did not move to modify the injunction until January 2004, or more than one month after it finished consumer testing on the product.
 
 
 37
 We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction. See Citibank, N.A., 756 F.2d at 276-77. By contrast, we have held that a short delay does not rebut the presumption where there is a good reason for it, as when a plaintiff is not certain of the infringing activity or has taken additional time to examine the infringing product. See, e.g., Tom Doherty Assoc., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 39-40 (2d Cir.1995) (delay of four months from the time plaintiff first heard of defendant's possibly infringing activity and three weeks after learning definitively of an objectionable act not unreasonable); Fisher-Price Inc. v. Well-Made Toy Mfg. Corp., 25 F.3d 119, 125 (2d Cir.1994) (delay not unreasonable where plaintiff searched unsuccessfully for five months after hearing a rumor of defendants' infringing products and sought injunction less than two weeks after finding and examining the product); see also Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 79 (2d Cir.1988) (delay not unreasonable where plaintiff brought an action seven months after infringing product was released to the market). While Weight Watchers did not act as promptly as it could have, the delay here, in all the circumstances, does not require denial of the modification it seeks.
 
 
 Conclusion
 
 
 38
 For the foregoing reasons, the order of the district court is vacated to the extent that it denied the motion to modify, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The disclaimer read as follows:
 
 
 *
 [N] Weight Watchers Winning Points®
 Weight Watchers® and Winning Points® are registered trademarks of Weight Watchers International, Inc. The number of Winning Points provided here has been calculated by Luigino's based on published Weight Watchers International, Inc. information and do [sic] not imply sponsorship or endorsement of such number of Winning Points or of Michelina's products by Weight Watchers International.
 
 
 [2]
 The disclaimer on the new packaging reads:
 
 
 *
 [N] Weight Watchers Winning Points®
 Weight Watchers® and Winning Points® are registered trademarks of Weight Watchers International Inc. The number of Winning Points provided here has been calculated by Michelina's based on published Weight Watchers International, Inc. information and do [sic] not imply sponsorship or endorsement of such number of Winning Points or of Michelina's products by Weight Watchers International.
 
 
 [3]
 Among the subjects tested was the effect of other disclaimers for the front of the package, including the statement, "Not Authorized or Approved By Weight Watchers."
 
 
 [4]
 Luigino's asserts that Weight Watchers failed to preserve its argument that Luigino's bore the burden of establishing that its use of the Points mark is not confusing. This contention is without merit
 It argues also that Weight Watchers did not preserve its claim that Luigino's bore the burden of establishing that its use of the Points mark was not confusing for purposes of a nominative fair use defense. In light of our holding with respect to Weight Watchers' first argument, we do not reach this question.
 
 
 [5]
 Luigino's contends that the "As Calculated by Michelina's" statement is not a disclaimer because it uses positive language. That is, it argues that the statement informs the customer of the origin of the point value, rather than negating a particular origin (e.g., "not associated with Weight Watchers"). We think that this is a distinction without a difference, at least in the circumstances of this case
 A disclaimer is a "a repudiation or denial of responsibility or connection." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 514 (4th ed.2000). Although a denial or repudiation often uses negative words, it need not do so. The important point is the effect of the language. Here, the district court found in the first hearing that Luigino's use of the Points mark was likely to cause consumers to be confused about the origin and sponsorship of the product. The statement "As Calculated By Michelina's" was an assertion that it was Michelina's, not Weight Watchers, that had calculated the point value for the particular product. This statement therefore acts, and is intended to act, as a disclaimer—a repudiation or denial that Weight Watchers had calculated the point value displayed on the package.
 
 
 [7]
 We do not here suggest that the addition of a disclaimer to infringing materials never will be sufficient, standing alone, to sustain the infringer's burden or that empirical or survey evidence always is requiredSee Soltex Polymer Corp. v. Fortex Indus., Inc., 832 F.2d 1325, 1330 (2d Cir.1987). We hold only that it was not sufficient in this case.